HANNAH SAVAGE by CHARLES B. SAVAGE, devisee,

*vs.*

MARY DELIA SAVAGE.

Sagadahoc.    Opinion July 30, 1888.

*Deed.  Married woman.   Husband and wife.   R. S., 1871, c. 61, § 1. Practice.   Duress.*

By R. S., 1871, c. 61, § 1, a married woman had the power to convey her land directly to her husband.

The court is not obliged to give a requested instruction when there is no evidence in the case to base it upon.

The jury were instructed that in order to constitute a deed from a wife to her husband void by reason of duress, it must appear that she was under so great a fear of bodily harm, or personal distress as to compel her to do that which she would not do voluntarily.   *Held*, sufficiently favorable to the party setting up the duress.

When a deed is attacked on the ground of mental incapacity of the grantor at the time of its execution, evidence of the conduct, declarations and mode of living of the grantor, both before and after the execution of the deed, is admissible.   But such evidence is not admissible to show duress.

ON exceptions.

Writ of entry to recover certain parcels of land in Woolwich, Maine.

The defendant offered in evidence a deed of the demanded premises, from Hannah Savage to David Savage, her husband, dated January 24, 1880, to the admission of which deed the plaintiff objected upon the ground that it was the deed of a married woman to her husband, and, for that reason, invalid.

This objection was overruled, and the deed was read in evidence, and the plaintiff had exceptions.

The plaintiff offered to prove the declarations of Hannah Savage, made a short time prior to the execution of her deed to David Savage, to the effect that David was so seriously urging her to give him a deed of the premises, by violent solicitations and threats, and so frequently, that her life was made miserable, and that she feared she would be obliged to give it up. The plaintiff, Charles B. Savage, offered to testify to the declarations of Hannah made within a few weeks, or, at most, within a few months prior to the date of her deed to David, that David was demanding of her a deed of the premises, and worrying her so violently and threatening her so frequently, to cause her to give him a deed, that her life was in torment, and she feared she would be obliged. to yield to his demand, to save herself from such torment; all of which testimony the presiding justice excluded, and the plaintiff had exceptions.

Hannah Brookings was called by the plaintiff and was allowed to testify to the fact that Hannah Savage, while she was so in possession of the demanded premises, claimed title thereto, but the court excluded the declaration of Hannah concerning the particulars of her title and the conveyance of land to David, to which exclusion the plaintiff had exception.

The plaintiff contended that the deed from Hannah to David was obtained by extortion by David, and under compulsion, and duress of circumstances created by him while she was sick, and, in consequence, of feeble mind. There was evidence tending to prove this position. The justice presiding *inter alia* instructed the jury :

1. "That if the deed from Hannah to David was voluntarily given by Hannah and obtained by the husband in good faith, the same was effectual to pass the title, notwithstanding it was the deed of a married woman to her husband."

2. "Now, this deed cannot be avoided unless at the time when it was given there was such unlawful conduct on the part of David that it would not have been the free and voluntary act of the wife when she did it. It appears that Hannah afterwards

made her will. That will has been allowed. That is evidence of sanity. But the learned counsel says she was sick. He says that David threatened that if she did not give him the deed he would not pay the taxes. Well, gentlemen, that threat, by itself, would not avoid the deed, because she had her choice. But the learned counsel says she was sick, and feeble, and that by continual teasing, and by continual threats, and by over persuasion she was induced to give this deed, by duress of circumstances, by which I understand him to mean such a condition of things as takes away from the grantor her free volition, and compels her from circumstances to do the act demanded by the grantee.

"Well, now, gentlemen, you may take into consideration all that has been proved to have been said. You may take into consideration the condition of health of Hannah, and I do not know that it has been contended that she was incompetent, because it is claimed that she was competent to make a will afterwards, five years afterwards. It seems her strength held out so that she was able to make a will. But at this time it is claimed that she was sick and weak, and that by reason of these continued threats, and continual pressure the continual teasing on the part of the husband, she was induced to give this deed.

"Now, gentlemen, take all the facts which have been proved in this case and determine whether or not Hannah, at the time she gave that deed, did it voluntarily as the magistrate has certified upon the back of it that she did. In other words, was it her free act and deed, or was it an act that was extorted from her by deceit, fraud, extortion and compulsion, so that she felt that she was compelled to do it for her own personal safety. If these circumstances, all together, taking her condition, so overcame her that she was compelled to do it for the safety of her own existence, then, gentlemen, I instruct you that the deed was avoided. But if, on the other hand, there were only continual inducements, requests, threats if you please, and finally, to avoid (rid) herself of these, she concluded on the whole that she would do it, and she did voluntarily give this deed, then, gentlemen, it is a valid deed, and she can never afterwards

dispute it from that cause. Take the evidence bearing upon this and determine, under the rules I have given you, whether it was a valid conveyance or not. If you find it was a valid conveyance, your verdict must be for this defendant. If you find it was an invalid conveyance, your verdict must be for this plaintiff."

3. After the jury had retired, they sent a written note to the court, and thereupon they were allowed to come into court, and the following proceedings were had and rulings and instructions given by the presiding justice, to which the plaintiff had exceptions :

"The Court. The jury wish to know : If the deed was obtained from Hannah Savage by David Savage on the ground that she thought if she did not deed it to him she would lose her support, is it duress ?"

"Not necessarily. The force of the pressure must have been so great that for fear of some serious distress, or bodily harm, she was overcome, so that the deed was not her free act.

"Mr. Gilbert. May it please your Honor, I would like to understand if the court means to limit it to the fear of bodily harm ?

"The Court. No ; bodily harm, personal stress, or distress. The mere threat that if one person does not do something she will lose property by it, or rights by it, is not duress. It must be that force, it must be that stress or conduct which compels them to do that which they would not do voluntarily.

"Mr. Gilbert. I ask the court to instruct the jury that if she was made to believe he would withdraw his support from her, or no longer do the duties of husband, and she was overcome in that way, that would avoid the deed.

"The Court. The instruction I must refuse, and give you an exception."

The plaintiff contested the validity of the two deeds of David to the defendant, dated September 1, 1885, and as bearing on their validity, put into the case evidence of the conduct, declarations and the mode of living of said David both before and after his execution of said deeds, tending to prove his mental incapacity to execute the same, and that they were obtained by fraud and imposition practiced upon him.

The defendant called one Pancoast as a witness who was allowed, against the plaintiff's objection, to testify, substantially, that in the spring of 1885, David Savage told him that he had formerly sent money to the plaintiff to buy some land in Cambridge, Mass. and that he thought the title had been taken to himself, but he had then found that the deed was to himself and the plaintiff jointly, and that he thought it was a rascally piece of business. The evidence was admitted upon the same ground that the evidence had been as tending to show the mental capacity of David, and to the admission of which the plaintiff had exception.

*Washington Gilbert*, for plaintiff.

The partial enfranchisement of the wife carries her as far as the statute goes and severs the dual person where the legislature so orders and not otherwise, and no further. And in all matters where legislation has not severed the common law bond of legal identity the doctrine stated still prevails, as found in 1 Bl. Com. Bk. I, p. 442.

"The husband and wife being one person in law, the former cannot after marriage, by any conveyance at common law, give any estate to the wife." Co. Litt. 112, a. 187 b.

"Nor the wife to the husband." Co. Litt. 187, b. as cited in note Bl. Com. p. 442.

"So that the very being and existence of the woman is suspended during the coverture or entirely emerged or incorporate in that of the husband." Bl. Com. Bk. 2, p. 433.

The statute in question is in derogation of common law, and must therefore, by acknowledged rule, be construed strictly. This doctrine has twice been applied by this court to the interpretation of statutes relating to the same subject. *Allen* v. v. *Hooper*, 50 Maine, 371 ; *Osgood* v. *Breed*, 12 Mass. 525 ; *Wilbur* v. *Crane*, 13 Pick. 290 ; *Dwelly* v. *Dwelly*, 46 Maine, 377.

The court construed strictly in *Osgood* v. *Breed*, and did not by extension allow it to destroy any of the incidents of marriage, but held husband and wife to their common law oneness with the consequent disability of the wife to convey.

Under the statute in vogue in the case of *Allen* v. *Hooper*, the married woman might convey as "if unmarried." On this clause the decision turns. Without this clause that decision would not have been made. But that clause had been abrogated before this deed was made, and it is submitted that the assumption that that case determines the law and puts the question beyond argument is simply gratutitous. R. S., 1871, c. 61, § 1.

Plaintiff commends to consideration a *dictum* of Mr. Justice VIRGIN, in *Webster* v. *Co. Com.* 63 Maine, 30.

"This," says the learned judge, "may prove somewhat of a hardship upon them ; but the responsibility is not upon us ; and neither can we aid in making shipwreck of the law because of the hardship."

Good law. How much less then in a case where the party invoking legislative action from the court has no merit in her cause.

*C. W. Larrabee*, for defendant, cited : *Chaplin* v. *Barker*, 53 Maine, 275 ; Bracton, Lib. 2, c. 15 ; *Adams* v. *Palmer*, 51 Maine, 486 ; *Allen* v. *Hooper*, 50 Maine, 371 ; *Hovey* v. *Hobson*, 55 Maine, 270 ; 2 Best, Ev. 900, note 1, (Morgan's Ed.) *Payne* v. *Craft*, 7. Watts & S. (Pa.) 562 ; *Sasser* v. *Herring*, 3 Dev. (N. C.) Eq. 340 ; *Pierce* v. *Faunce*, 37 Maine, 68 ; *Bartlet* v. *Delprat*, 4 Mass. 701 ; *Clarke* v. *Waite*, 12 Mass. 438 ; *Sullivan* v. *Lowder*, 11 Maine, 428 ; *Crane* v. *Marshall*, 16 Maine, 29 ; *Alden* v. *Gilmore*, 13 Maine, 178 ; *West Cambridge* v. *Lexington*, 2 Pick. 536 ; 1 Greenl. Ev. § 110 ; 1 Starkie, Ev. § 26 ; *Brewer* v. *East Machias*, 27 Maine, 494 ; *Fuller* v. *Ruby*, 10 Gray, 285 ; *Webster* v. *Calden*, 55 Maine, 170 ; *Oxnard* v. *Swanton*, 39 Maine, 128 ; 2 Green. Ev. § 301 ; Chitty, Contracts (5 Am. ed.) 207 ; *Bryant* v. *Couillard*, 52 Maine, 520 ; *Dunn* v. *Moody*, 41 Maine, 239 ; *Hovey* v. *Chase*, 52 Maine, 318 ; *Pope* v. *Machias Water Power Co.* 52 Maine, 535 ; *Gorden* v. *Wilkins*, 20 Maine, 134 ; R. S., c. 82, § 85 ; *Dyer* v. *Greene*, 23 Maine, 464 ; *Warner* v. *Arctic Ice Co.* 74 Maine, 475.

LIBBEY, J. Both parties claim the land in controversy under Hannah Savage, who, it is admitted, was the owner January 24,

1880. The plaintiff claims as devisee under the will of said Hannah, who died December 9, 1886. No question is raised as to the validity of the will; and if she held the title at her death the plaintiff must prevail.

The defendant claims that said Hannah conveyed her title to David Savage, her husband, January 24, 1880, and that he conveyed to her, September 1, 1885.

The plaintiff contests the validity of the deed from Hannah Savage to David Savage on two grounds. 1. That when said deed was executed a married woman had no power to convey her lands to her husband. 2. That the deed was obtained by duress.

1. Prior to the act of 1847, c. 27, husband and wife could not contract with each other, because at common law from their legal union they were regarded as one person so far as their power to contract with each other was involved; but by that act the husband was clothed with power to convey his real, or personal estate directly to his wife. *Johnson* v. *Stillings*, 35 Maine, 427.

By the act of 1852, c. 227, the wife was empowered to convey her real, or personal estate directly to her husband; not in direct terms, but as a result of the power given her to convey her estate "as if she were unmarried." *Allen* v. *Hooper*, 50 Maine, 371.

If the legal meaning of the act of 1852, has not been changed by the legislature since its passage, *Allen* v. *Hooper*, is conclusive as to the power of Hannah Savage to convey directly to her husband.

In the revision of 1857, c. 61, § 1, the words used in the act of 1852, giving a married woman the power to convey or devise her real, or personal estate "as if she were unmarried," were changed to "as if sole." This did not change the meaning at all. By act of 1861, c. 46, R. S., of 1857, c. 61, § 1, was amended by striking out the words "as if sole, and," so that it read as follows: "Section 1. A married woman of any age, may own in her own right, real and personal estate acquired by descent, gift, or purchase; and may manage, sell, convey, and devise the same by will, without the joinder or assent of her husband."

It is claimed by the learned counsel for the defendant that this change in the terms of the statute was intended by the legislature to restore the unity, or *oneness* of husband and wife, so that the wife could no longer convey her lands directly to her husband. If so it would seem to restore their common law relation so that the husband could not convey to the wife; but there is no change in the terms of the statute construed by the court as giving that power in *Johnson* v. *Stillings, supra,* and the statute still recognizes the authority of the husband to convey directly to the wife, and, in such case declares she shall not convey "without the joinder of her husband in such conveyance."

It is not necessary to determine the intention of the legislature in the amendment of 1861 ; but it may be found in the act of 1857, c. 8, which provides that, "when a husband waives a provision made for him in the will of his deceased wife, her estate being solvent, and in all cases where she dies intestate and solvent, he shall be entitled to an allowance from her personal estate, and a distributive share in the residue thereof, in the same manner as a widow is in the estate of her husband ; and if she leaves issue he shall have the use of one-third ; if no issue, of one-half of her real estate, for his life, to be recovered and assigned in the manner and with the rights of dower." It may have been supposed that this act was inconsistent with R. S., of 1857, c. 61, § 1, giving the wife power to devise her lands *"as if sole"* and the amendment of 1861, striking out the words above quoted, was made to bring the two statutes into harmony. No other intention is perceived.

By the revision of 1871, which was in force when the deed in contention was made, no change was made in these statutes in respect to the question involved here, and we have no doubt Hænnah Savage had legal power to convey her lands directly to her husband, when she executed the deed to him.

2. The law given to the jury by the presiding judge on the question of duress was sufficiently favorable to the plaintiff. The attention of court has not been called by the learned counsel to any authority which holds it more favorable for him.

If the requested instruction presented sound law in the abstract,

the case does not show that there was any evidence proving, or tending to prove the facts upon which it was based, and the judge, for that reason, might well refuse it. He had already fully instructed the jury upon the law of the case. We can see no error in the exclusion, or admission of the evidence excepted to.

The motion is not relied on, no report of the evidence having been furnished.

*Exception and motion overruled.*

PETERS, C. J., WALTON, VIRGIN, FOSTER and HASKELL, JJ., concurred.