EDMA G. TROUSSEAU *v.* BRUCE CARTWRIGHT and HUGH McINTYRE, Executors of the Will of GEORGE P. TROUSSEAU, deceased.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED SEPTEMBER 30, 1895.   DECIDED OCTOBER 29, 1895.

JUDD, C.J., FREAR, J., AND E. P. DOLE, ESQ., A MEMBER OF THE BAR, IN PLACE OF MR. JUSTICE BICKERTON, ABSENT FROM ILLNESS.

The agreement sued on and set forth in the opinion of the Chief Justice is supported by a sufficient consideration.

It was both made and to be performed in this country, although executed by one of the parties thereto in Paris, France.

The capacity of a married woman to contract is governed by the *lex loci contractus*.

A separated wife domiciled in a foreign country may contract with her husband in this country.

A widow may sue the representatives of her deceased husband upon a valid contract made with him.

OPINION OF THE COURT BY JUDD, C.J.

This action is assumpsit by Madame Edma G. Trousseau, widow of the late George P. Trousseau, against his executors upon a contract in writing made in 1882, signed by plaintiff in Paris, France, on the 10th June, and in Honolulu on the 13th July by G. Trousseau, the decedent.   The agreement is in the French language, of which an English translation is furnished as follows:

"It has been agreed and arranged as follows between the

undersigned, Mr. George Phillipe Trousseau, living at Honolulu, Sandwich Islands, of the one part, and Madame Edma Genevieve, living at Paris, boulevard Hausmann, No. 64, having been married, but now separated from the said George Trousseau, of the other part:—

### ARTICLE 1.

Monsieur Trousseau admits as absolutely correct the account of the claims and demands proved by Madame Trousseau, on the 11th of March, 1882, which said account amounts to the sum of one hundred and fifty thousand, eight hundred and sixty-five francs and fifty centimes.

### ARTICLE 2.

Monsieur Trousseau engages to pay immediately to the French Consul at Honolulu, to the credit of Madame Trousseau's account at Paris, a sum sufficient to form a capital of twenty thousand francs, payable at Paris in French money to Madame Trousseau upon her receipt for the same.

### ARTICLE 3.

Monsieur Trousseau engages to pay henceforth upon the same conditions on the first day of January of each year, and for the first time on the 1st day of January, 1884, to the French Consul at Honolulu, a sum sufficient to form a capital of five thousand francs, payable at Paris each year in French money to Madame Trousseau upon her receipt for the same.

This sum of five thousand francs is considered and regarded as interest on the capital of one hundred and thirty thousand, eight hundred and sixty-five francs and fifty centimes, which will remain due from Mons. Trousseau to Madame Trousseau after the payment of the sum of twenty thousand francs, of which mention has been made above.

Mons. Trousseau engages, if his circumstances allow him and as soon as they allow him, to discharge the total amount

of his debt to Madame Trousseau, by paying over to her the capital which will remain due to her.

As soon as this capital is reduced to one hundred thousand francs, the annual sum of five thousand francs settled as above, will decrease in proportion as the total debt is extinguished, this annual sum of five thousand francs commencing from this period being considered as the interest at the legal rate in France, namely, five per cent. of this capital of one hundred thousand francs.

### ARTICLE 4.

In case of the death of Madame Trousseau, Monsieur Trousseau undertakes to perform the preceding obligations on behalf of his two sons.

### ARTICLE 5.

If Monsieur Trousseau should leave Honolulu, he undertakes to notify the French Consul of the place where he proposes to establish his new residence.

### ARTICLE 6.

Upon these conditions and immediately after the first payment to the French Consul at Honolulu of the sum sufficient to form a capital of twenty thousand francs, payable at Paris in French money, Madame Trousseau undertakes to discontinue forthwith the proceedings instituted by her against Mons. Trousseau at Honolulu, and to withdraw the demand made by her before the Court of Hawaii.

### ARTICLE 7.

The present articles of agreement should be performed in good faith on the part of both parties, and in the event of non-payment of any of the sums above mentioned at the date when it falls due, Madame Trousseau will be at liberty to renew the proceedings upon the mere information which shall have

been given to her by the French Consul at Honolulu, that the sum of money has not been paid at the date when it fell due.

This agreement is made in three originals, one for Mons. Trousseau, the second for Mme. Trousseau, and the third for the Bureau of the French Consulate at Honolulu.

At Paris, the tenth day of June, A. D. 1882, for Mme. Trousseau, and at Honolulu the thirteenth day of July, 1882, for Mons. Trousseau.

In approval of the foregoing instrument.
          (Signed)                                    E. TROUSSEAU.
                                                          *nee* VAUNOIS.

In approval of the foregoing instrument.
          (Signed)                                    G. TROUSSEAU."

The bill of particulars claims, amount of principal due and unpaid as per the agreement executed by defendant July 13, 1882—$26,173 and interest on the said sum from 1st January, 1894, at 5 per cent., $1158.16; total, $27,331.16.

The complaint, after pleading the agreement, sets out *inter alia* that the decedent, in pursuance thereof, paid the sum of five thousand francs annually to the plaintiff to the end of the year 1893, but paid nothing on the principal sum of one hundred and thirty thousand, eight hundred and sixty-five francs and fifty centimes. That the agreement declared on was made in consideration that the plaintiff would forbear to proceed in a certain action then pending in the Supreme Court of the Hawaiian Islands, brought by her against said George P. Trousseau to recover the sum of $37,862.28 then due, owing and payable by the said George P. Trousseau to plaintiff upon the judgment of a French Court, and that plaintiff, upon the execution and delivery of said agreement, discontinued her said action, and that at the date of the agreement declared on she (plaintiff) was separated from her said husband by decree of a French Court, and said decree was, and until his death remained, in full force and effect, and that by the law of France and also by the law of Hawaii, at the date of said agreement,

plaintiff had the right to make contracts and bring suits thereon in her own name as if she were a *feme sole.*

The defendants, executors, interposed a demurrer, alleging as grounds:

1.   The complaint is insufficient in law.

2.   The agreement sued on is void for want of a good, sufficient and valuable consideration.

3.   The alleged contract sued on is inoperative and of no effect, being an attempted contract between husband and wife.

The demurrer was sustained by Circuit Judge Cooper, on the ground (first) that the agreement does not show any consideration for the promise to pay the principal sum, but only the interest, a forbearance by plaintiff upon Mons. Trousseau's promise to pay interest which he was bound to pay without any new promise and (second) because the parties being separated but not divorced, the statute of 1888, would not authorize a suit by the wife against her husband or his personal representatives.

The law is well settled that forbearance to exercise a right is a good consideration. "A valuable consideration, in the sense of the law, may consist in some right, interest, profit or benefit accruing to the one party or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." *Currie v. Misa,* 10 L. R. Exch. 162.

"The consideration upon which an assumpsit shall be founded must be for the benefit of the defendant or to the trouble or prejudice of the plaintiff.   And therefore a promise in consideration of the forbearance of a suit is good; for that is for the benefit of the defendant, though the action is not discharged." 1 Comyn's Digest, p. 195.

Prof. Langdell in his notes to select cases Part II. p. 1022 finds that "detriment to the promisee is a universal test of the sufficiency of consideration; *i. e.* every consideration must possess this quality, and, possessing this quality, it is immaterial whether it is a benefit to the promisor or not."   Tested by this

rule I find that it was a detriment to Madame Trousseau (the promisee) to give time to Mons. Trousseau, to pay the remainder of principal debt "as soon as circumstances would allow" (*i. e.* "when able")—and the taking of interest annually at less than the Hawaiian rate. I hold, therefore, that Mons. Trousseau's assumpsit was upon valuable considerations and the agreement in this respect was good.    This ground of demurrer cannot be sustained.

The remaining question is whether the contract itself is inoperative and void, as having been made between husband and wife, who though separated by judicial decree, were not divorced.

The interesting inquiry whether the validity of this contract should be tested by French or Hawaiian law becomes pertinent. The contract was made in 1882; the Married Woman's Act of 1888 has, therefore, no effect upon it.    The contract must be tested by the law in force at the time it was made, whether French or Hawaiian.    I am of opinion that it must be judged by Hawaiian law.

The contract was drafted here.    It is of no significance that it was in the French language; it might have been written in any other language.    The domicil of Mons. Trousseau was here, and the suit against him was pending in this court.    The contract was to be performed here.    Mons. Trousseau did not engage to pay Madame Trousseau in Paris.    He bound himself to pay to the French Consul at Honolulu a certain sum which would be equal to five thousand francs in Paris.    This means that if the payment of one thousand dollars here would not be sufficient to net 5000 francs in Paris, he must bear the exchange; in case he removed from Honolulu, he was to notify the Consul of the place where he proposed to establish his new residence.    The "mere information" to Madame Trousseau by the French Consul at Honolulu that any of the sums agreed by Mons. Trousseau to be paid were not paid when due, authorized Madame Trousseau to revive the suit. The Consul here was to judge whether the contract had been broken.

When tested by the rule that the place of the performance
of the contract is to be determined by the intention of the
parties, we find that the place of the performance was to be at
Honolulu, and the contract is to be governed by Hawaiian law.
Having thus held, it is unnecessary to consider whether the
French law is well pleaded in the complaint.

Is this contract void? By the common law it would be, as
being made between husband and wife. But a decree of
divorce *a mensa et thoro* had been made. Madame Trousseau
was a "separated wife."

Our Hawaiian statute defining the status of such a woman is
peculiar. I do not find any similar statute in other countries.
See *Dean v. Richmond* 5 Pick. 561. The statute reads (Sec.
1339 Civil Code, Comp. Laws, p. 440): "Whenever a decree of
separation is granted, the decree shall have the effect, during
such separation, to reinstate the wife, whether the wrong-doer
or not, in the right to sue or be sued, to alienate and convey
property, to make contracts and to do all other acts as if she
were a *feme sole*."

Separation from bed. and board being a relief to married
persons under certain circumstances, created by statute, the
statute must control. The separated woman is not forbidden
by the statute to make contracts with her husband. This
character of contracts is not excepted, as in the Married Wo-
men's Act of 1888.

I find the statute broad enough to allow the separated woman
to contract with her husband.

This construction is in accord with the modern policy of the
treatment of woman.. If she is separated from her husband
by decree of court she ought to have power to make contracts
with every one, not excepting her husband. The statute says
that the decree shall have the effect to *"reinstate"* her in these
rights as if she had not been married.

Very many courts have held that where the Married
Women's Acts allow the wife to have "sole control" of her
separate property or "to act as a *feme sole*," she may sue even

her husband with respect to it.   *Wright v. Wright*, 54 N. Y. 437; *Whitney v. Whitney*, 49 Barb. 319; *Scott v. Scott*, 13 Ind. 225; *Emerson v. Clayton*, 32 Ill. 493; and may recover against him in ejectment, *Wood v. Wood*, 83 N. Y. 575.   The opposite view is sustained in *Small v. Small*, 129 Penn. 366.

If the right of a married woman, separated from her husband, to contract with him and to sue him, is limited to contracts and suits concerning her separate property, the case before us seems to be of that character.   A French Court had adjudged Mons. Trousseau to be indebted to his wife in the large sum mentioned.   The judgment was, therefore, her separate property, and she brought the suit here to enforce it.

The exceptions are sustained and the demurrer is overruled.

The case is sent back to the Circuit Court, First Circuit, for further proceedings.

### OPINION OF FREAR, J.

While I concur in the conclusion of the Chief Justice, and in the general line of thought pursued by him, yet I desire to state my views somewhat differently, though I shall do so but briefly, inasmuch as he has so fully stated much of the law bearing upon the case.   I shall consider in order each of the five questions which, in my opinion, must be decided in disposing of the exceptions.

First, the argument against plaintiff's capacity to bring this action, based as it is upon a supposed absence of statutory authority for suits by a wife against her husband, is sufficiently answered by the mere statement of the fact that the action was brought neither by a wife nor against a husband, but by a widow, a *feme sole*, against certain third parties, executors.

Secondly, was there a sufficient consideration for the promise sued on, namely, that of Mons. Trousseau?

A consideration is to be distinguished from a condition, and a consideration consisting of a promise to perform is to be distinguished from a consideration consisting of performance.

In this case the contract is somewhat inartificially drawn, but it seems to be bilateral, consisting of mutual promises, those on each side being collectively the consideration for those on the other side. The consideration for Mons. Trousseau's promises was apparently Madame Trousseau's promise to discontinue her suit upon certain conditions and to forbear renewing proceedings upon certain other conditions.

There may be ground for argument that the instrument in question contains two or more unilateral contracts, Mons. Trousseau's promises being considered as made upon condition that his wife should perform certain things, in which case upon her performance thereof the condition ripened into a consideration.

In either case his promises were made for a sufficient consideration—either her promise or her performance.

If the contract was bilateral, it is unnecessary to consider now how far the performance of each promise was dependent upon the performance of the other. If there were two or more unilateral contracts, it is unnecessary to say, whether there was a sufficient consideration for her promises, for the suit is not brought on her promises, but on his. I am, however, of the opinion that there was ample consideration for her promises.

Thirdly, by what law is the validity of the contract to be determined so far as this depends upon the status of the plaintiff as a separated wife at the time the contract was made?

That the validity of a contract, in so far as this depends upon the nature or form of the contract itself, is governed by the *lex loci contractus*, is so well settled as to need no citation of authority—subject always, of course, to the qualification that the contract must not be immoral or unjust or injurious to the country or the citizens of the country in which rights under it are sought to be enforced.

But in so far as the validity of a contract rests upon the status of a party thereto, there is considerable diversity of opinion in respect to the law which should govern. The continental European jurists as a rule maintain that the *lex domicilii* should

govern. In England the question seems to be somewhat unsettled. In the United States, there has been some leaning towards the European doctrine, as for instance, in *Matthews v. Murchison*, 17 Fed. Rep. .760, in which, however, the statement of the court that the *lex domicilii* controlled as to the ability of a married woman to contract, may perhaps be regarded as *obiter dictum*, inasmuch as the *locus domicilii* in that case was also the *locus contractus*. See also 3 Am. & Eng. Enc. of Law, 573. But it may now be considered as settled by the decided weight of authority and, it seems to me in consonance with the better reasons, that the *lex loci contractus* is generally to govern questions of capacity to contract as well as questions of the validity of the contract itself. See the leading case of *Milliken v. Pratt*, 125 Mass. 374, for a discussion of the authorities and a lucid statement of the arguments *pro* and *con*, by Chief Justice Gray, now a Justice of the Supreme Court of the United States. See also *Ross v. Ross*, 129 Mass. 243; *Bell v. Packard*, 69 Me. 105; *Graham v. National Bank*, 84 N. Y. 393; *Nixon v. Halley*, 78 Ill. 611; *Wright v. Remington*, 41 N. J. L. 48; *Holmes v. Reynolds*, 55 Vt. 39; Story, Conf. of Laws, Sec. 103; Whar., Conf. of Laws, Sec. 120.

Fourthly, in this case, which is the *locus contractus*, France or Hawaii, by the law of which the capacity of the plaintiff to make the contract in question should be determined?

The *locus contractus*, that is, the seat of an obligation, may be either the *locus celebrationis* or the *locus solutionis*, the place where the contract is made or that where it is to be performed. Whether it is one or the other in any particular case is a question of fact rather than of law—a question chiefly of the intention of the parties. For the validity of "a contract is governed by the law with the view to which it was made." In general in the absence of anything showing a contrary intention, the *locus celebrationis* is to be regarded as the *locus contractus*, but if the contract is to be performed elsewhere, this is regarded as strong and in some cases conclusive evidence

that the contract was made with reference to the *lex loci solutionis*. For a clear statement of the law and references to the authorities upon this phase of the case, see *Pritchard v. Norton*, 106 U. S. 124.

In the present case, I find that the contract was both made and to be performed in this country, and hence there is no occasion to consider any conflicting views as to whether the *lex loci celebrationis* or the *lex loci solutionis* should govern for they are identical in this case.

In the first place the contract was made here. This is clear both from the contract itself and from the pleadings.

The contract was executed by Madame Trousseau in Paris, June 10, 1882, and by Mons. Trousseau at Honolulu, July 13, 1882. But it must be regarded as completed as a binding contract at the same time and place, at least, if it be considered as one bilateral contract. And since it cannot have become a contract until there was a meeting of the minds of the parties, it must be considered as having become binding at the time and place where it was last executed, that is, at Honolulu, the assent of the party first executing being deemed to continue until execution by the other party. If there were two unilateral contracts, then there can be no question that the promise sued on, that is, Mons. Trousseau's, was made here.

The pleadings also show that the contract was made here, for the agreement is described in the declaration as "made and signed by the said decedent on the 13th of July, A. D. 1882," at which time the document was executed by him at Honolulu.

In the second place, the contract was to be performed here. On Madame Trousseau's part, performance, namely, discontinuance and forbearance, was to take place here. On Mons. Trousseau's part, his admission of the correctness of the claim against him was made here; his payments were to be made to the French Consul here, though payable ultimately in Paris; failure on his part to pay the Consul here is expressly made a breach of the contract; payment by him to the Consul here would be performance on his part whether the money ever

reached Paris subsequently or not; in case of his departure from Honolulu, he was to notify the Consul here of his proposed new residence, and, presumably, continue to remit to the Consul here. It may be that the remote matter for the settlement of which this agreement was made was the decree of the French court, or some other matter having its seat in France, but this alone, if shown to be a fact, would not control the other circumstances of the case, while on the other hand the immediate matter for the settlement of which the agreement was made was the suit in the Hawaiian court.

Lastly, under Hawaiian law, in 1882, could a separated wife make a contract of this kind with her husband? It is provided in Section 1339 of the Civil Code that "Whenever a decree of separation is granted, the decree shall have the effect, during such separation, to reinstate the wife, whether the wrong-doer or not, in the right to sue or be sued, to alienate and convey property, to make contracts, and to do all other acts as if she were a *feme sole.*" The question is, whether this statute is to be construed as authorizing contracts with any person, according to the plain and natural meaning of the words, or as excepting by implication contracts with a husband.

The statutes elsewhere most similar to the statute now in question, and which have been the subject of judicial construction, are the so-called Married Women's Acts. Under these acts there seems to be a great preponderance of authority in favor of the view that a married woman, even though not separated from her husband, may sue him in matters respecting her separate property, on the ground that such power to sue is necessary to secure to her the enjoyment of her property and effectuate the purpose of the statutes. The debt which was the basis of this agreement was the wife's separate property, and therefore it would seem that she could sue him for it. Could she not equally well arrange with him for the settlement of the claim peaceably? Does the policy of the law require that a wife should enforce her rights against her husband by litigation rather than by agreement?

But to reason more directly, the Married Women's Acts elsewhere generally authorize a wife to contract as a *feme sole* only with reference to her separate property. If, therefore, such acts authorize her to contract with her husband with reference to her separate property, it may logically be inferred in the present case that the statute · in question authorized the contract in question, not only because the subject matter of the contract was the wife's separate property, but because our statute is broader in that it is not confined to contracts respecting separate property, and also because there is much more reason for allowing a separated wife to contract with her husband than there is for allowing one who is not separated to do so.

While there is much difference of opinion upon this point, yet the preponderance of authority, as well as the plain meaning of the words of the statute, and the policy of the law at its present stage, support the view that a statute authorizing a married woman to contract "as if sole" or "as a *feme sole*," or "as if unmarried," as variously expressed, authorizes her to contract with her husband. See *Allen v. Hooper*, 50 Me. 371; *Savage v. Savage*, 80 Me. 472; *Albin v. Lord*, 39 N. H. 196; *Beard v. Dedolph*, 29 Wisc. 126; *Hamilton v. Hamilton*, 89 Ill. 349; *Tomlinson v. Matthews*, 98 Ill. 178; *Robertson v. Robertson*, 25 Ia. 350; *Williams v. Harris*, 54 N. W. (N. D.) 926; *In re Kinkead*, 3 Biss. 405; *Bank of America v. Banks*, 101 U. S. 240.

The exceptions, therefore, should be sustained and the demurrer overruled.

### OPINION OF E. P. DOLE, ESQ.

I concur in the opinions of Chief Justice Judd and Justice Frear, first, that there was a sufficient consideration for the contract; second, that its validity depends upon law existing when it was made; third, that when this contract was made, a married woman judicially separated from her husband was empowered by Hawaiian law to make such a contract with

him; and fourth, assuming that it is a Hawaiian contract, that she can maintain an action thereon in Hawaiian courts against the executors of his will.

Notwithstanding the able and very carefully considered opinions of Chief Justice Judd and Justice Frear, I am not entirely satisfied that the contract is Hawaiian rather than French; but as I am satisfied that its validity under the French law is sufficiently well pleaded, my conclusion, for the purposes of this case, is the same whether the contract is French or Hawaiian.

I think that the exceptions should be sustained and the demurrer overruled.

*A. S. Hartwell* and *W. L. Stanley*, for plaintiff.

*F. M. Hatch* and *L. A. Dickey*, for defendants.