THE CENTRAL LUMBER COMPANY

*v.*

JOHN B. KELTER *et al.*

*Opinion filed February 18, 1903.*

1. PRACTICE—*change in form of action does away with pleadings in former action.* A change in the form of an action from debt to assumpsit does away with the pleadings in the former action, in the absence of any stipulation or order of the court to the contrary.

2. CORPORATIONS—*when execution of bond by corporation is not ultra vires.* A corporation organized for "the purchase and sale of lumber, and all adjuncts for carrying on a general lumber business," has power to execute a bond for the performance of a building contract in order to secure a sale of lumber to the contractor.

3. EVIDENCE—*what competent as tending to show that execution of bond was to make a sale.* As tending to show that a bond executed for a lumber company by its salesman was executed to secure a sale of lumber to a contractor, evidence that similar bonds had been executed by the company, and that the company, in a subsequent letter, agreed to carry out the bond, is admissible.

4. SAME—*when not error to admit a letter purporting to ratify a bond.* A letter from a corporation purporting to ratify a bond executed by its agent is admissible over an objection that it is "incompetent, irrelevant and immaterial," not to aid the validity of the bond, but as tending to prove the corporation executed the bond.

5. CONTRACTS—*what not such a breach of contract as precludes resort to bond.* Failure of the owner to withhold payments on a building contract does not preclude his resort to a bond given for the faithful performance of the contract, although the contract provides that payments shall be made in accordance with the Mechanic's Lien act, as amended in 1891, fixes a time for making partial payments and final payments, and recites that the "twenty per cent agreed to be reserved shall be held by the proprietor as security," etc.

*Central Lumber Co.* v. *Kelter*, 102 Ill. App. 333, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

On September 1, 1896, appellees brought an action of debt in the circuit court of Cook county against appellant and one Michael Rafferty upon an alleged bond dated

June 1, 1895, made by the said Rafferty and the appellant, conditioned for the faithful performance of a building contract that day entered into between Rafferty and appellees. The Central Lumber Company filed a plea *non est factum* verified, and issue was joined thereon. Rafferty was defaulted. On October 6, 1899, a trial was begun and one witness examined, but the plaintiffs withdrew a juror and the cause was continued. On April 4, 1900, the action was changed to assumpsit, and E. A. Thornton was made a party defendant and a new declaration filed in assumpsit, consisting of three special counts and the common counts. The appellant lumber company filed three pleas to that declaration,—general issue, *ultra vires* and *non est factum*,—and E. A. Thornton demurred to the special counts and filed a plea of the general issue as to the common counts, and his demurrer was sustained. On May 19, 1900, plaintiffs again amended the declaration by filing two additional counts, and on the 24th, by agreement of parties, the pleas of this appellant filed April 23, 1900, and the demurrer of Thornton,—that is, the first pleas and demurrer to the action of assumpsit,—were ordered to stand to said additional counts. On June 2, 1900, the demurrer of Thornton was sustained to said additional counts, and on plaintiffs' motion appellant's plea of *non est factum* to the amended declaration (which had been filed April 4, 1900, and the additional counts of May 19, 1900,) was stricken from the files. Issues were then joined on the pleas of the general issue and *ultra vires* by appellant. On January 31, 1901, Rafferty was defaulted and a trial had, in which the verdict was in favor of the plaintiffs for $1385.75. Pending a motion by appellant for a new trial, the plaintiffs, by leave of court, discontinued the action against Thornton and entered a *remittitur* of $11.33 from the verdict, and thereupon the motion for a new trial was overruled and a judgment entered against Rafferty and the Central Lumber Company for $1374.42. The lumber company appealed to the Appel-

late Court for the First District, and the branch of that court to which the appeal had been assigned affirmed the judgment of the circuit court. To reverse that judgment of affirmance this appeal is prosecuted.   Other facts important to be considered.are stated in the opinion.

ELMER H. ADAMS, for appellant.

KNIGHT & BROWN, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

It will be seen from the foregoing statement that the pleadings are very much involved.   The case as to this appellant was tried on the declaration in assumpsit filed on April 4, 1900, with the two additional counts of May 19 and pleas of the general issue and *ultra vires*.   The declaration, as amended, counts upon a building contract between plaintiffs and Rafferty for the erection and completion of three houses on or before September 1, 1895, for the consideration of $8400, to be paid on certificates of M. Kelter, one of the plaintiffs, superintendent, as the work progressed, and a bond executed by said Rafferty and the Central Lumber Company, by E. A. Thornton, in the sum of $3000, conditioned for the faithful performance of said building contract.   It also sets forth the following letter from Knight & Brown, plaintiffs' attorneys:

"*October 10, 1895.*

"*Central Lumber Co., 145 Elston Avenue, City:*

"GENTLEMEN—We desire to call your attention to the present condition of the work and affairs under the contract made between Mr. M. Rafferty and John B. Kelter and M. Kelter, dated June 1, 1895, for the erection by Mr. Rafferty of buildings upon the premises known as Nos. 179, 179½ and 181 Douglas boulevard, in the city of Chicago.

"You will remember that Mr. Rafferty entered into a contract with Mr. John B. Kelter and Mr. M. Kelter for the erection of buildings, as in the contract described, upon the premises above mentioned, for the sum of $8400, Mr. Rafferty to furnish the labor and material for the erection of these buildings complete,

which contract was dated June 1, 1895. On the same day Mr.
Rafferty entered into a bond for the faithful performance of
this contract in the penal sum of $3000, with the Central Lum-
ber Company as surety. Mr. Rafferty has not yet completed
the buildings as provided in his contract, and it may be a week,
and even more, before the buildings are completed in accord-
ance with the contract, and, of course, the Messrs. Kelter are
entitled to liquidated damages for the delay, as provided by
the contract. The account between the Messrs. Kelter and Mr.
Rafferty now stands as follows:

Contract price............................................$8400.00
Extra work done.......................................... 140.80

Total credit to Mr. Rafferty.......:....................$8540.80
Paid Mr. Rafferty on account of contract to date.......... 8403.13

Balance due Mr. Rafferty on account of contract and ex-
    tra work when buildings completed..................... $137.67

"Mr. Rafferty, however, has just furnished the Messrs.
Kelter with a contractor's statement showing that there is
due by him to sub-contractors and laborers who possibly have
mechanics' liens upon the premises in question, the sum of
$1385.75, a copy of which contractor's statement we enclose
you herewith for your better information. You will therefore
see that, independent of the question for damages for delay,
there will be owing to the Messrs. Kelter, after these sub-con-
tractors and laborers have been paid, the sum of $1248.08 from
Mr. Rafferty. We send you this statement so that you may be
fully advised in the premises, and we will act upon your instruc-
tions in the matter as to the paying of these sub-contractors.

"Trusting that we may hear from you by return mail, as
some of the sub-contractors are becoming very imperative in
their demands for payment, we are,

"Yours very truly,    KNIGHT & BROWN."

It is first contended that the circuit court erred in ad-
mitting the alleged bond in evidence without preliminary
proof of its execution. This point is based upon the as-
sumption that there was a plea of *non est factum* to the
amended declaration, and that such a plea was sufficient
to put in issue the execution of the instrument, within
the meaning of section 34 of chapter 110 of the Revised
Statutes. Even if all that is here claimed were true, still
there was no such plea on file. The plea of *non est factum*

filed to the action of assumpsit was, on the motion of the plaintiffs, stricken from the files, and although complaint is now made of the ruling of the court in refusing to allow a plea of that character to be filed instanter, no error has been assigned upon the ruling denying that leave. It is contended, however, that because such a plea was interposed to the action of debt it remained on file to the declaration in assumpsit. We think it clear that without some stipulation or order of the court to the contrary, the change of the form of action had the effect to do away with all the pleadings in the former action. Besides, the foregoing statement clearly shows that the parties so understood, and that the defendant did not rely upon any such plea on file at the time of the trial.

It is again contended that the bond sued on was *ultra vires* the power of the corporation. The company was organized for "the purchase and sale of lumber, and all adjuncts for carrying on a general lumber business." If the bond was executed on the part of the corporation for the purpose of securing a sale of lumber to Rafferty, the contractor, the making of the bond was within its implied powers. (*Richelieu Hotel Co.* v. *Military Encampment Co.* 140 Ill. 248; *Green Co.* v. *Blodgett,* 159 id. 169.) The case, with such proof, is clearly distinguishable from *National Home Building Ass.* v. *Bank,* 181 Ill. 35, *Best Brewing Co.* v. *Klassen,* 185 id. 37, *Fritze* v. *Equitable Building Society,* 186 id. 183, and *Wheeler* v. *Home Savings Bank,* 188 id. 34.

The position of counsel that there is no evidence fairly tending to show that the bond was executed for the purpose of accomplishing the sale is unwarranted. It may be admitted that the testimony to that effect is not entirely satisfactory, but it cannot be said that there is no evidence, with all the reasonable inferences to be drawn therefrom, which fairly tends to prove the fact. E. A. Thornton, who executed the bond on behalf of the appellant, was a salesman for the company, and sold the lumber to Rafferty with which to construct the buildings

under his contract with the plaintiffs, and a few days after it was executed plaintiffs wrote to the company inquiring about the matter, and received a letter, signed by the company, saying: "In the matter referred to in your favor of the 1st inst., we beg to say that we ratify Mr. Thornton's signature to the bond mentioned and will see that the conditions are carried out." It also appears that the company had executed similar bonds for other contractors. We regard these and other facts proved as fairly tending to show that the bond was executed within the implied powers of the corporation, and that there was no error in admitting it in evidence.

It is also insisted that it was error to admit the foregoing letter, ratifying the execution of the bond, in evidence. As is said by the Appellate Court, the only objection to its introduction was that "it is incompetent, irrelevant and immaterial." The insistence now is, that the bond, being under seal, could not be ratified by the letter, which was not under seal. That is not the question raised by the objection. Was the evidence competent for any purpose? One of the plaintiffs, Michael Kelter, went to the office of the company after the letter was written and had a conversation with Mr. Gilman, the manager, who admitted the bond had been executed by Thornton and the letter written by the company, but said neither was worth the paper it was written upon. The letter neither added to nor detracted from the validity of the bond, but did tend to prove the contract of the corporation in its execution.

It is contended very earnestly that the plaintiffs could not recover in this action because they had not strictly complied with the terms of the building contract, in that they had not paid according to that provision which says: "Payments to be made from time to time, according to the provisions of section 35 of the law of Illinois referring to sub-contractors' liens, as in force since July 1, 1887, and as amended and in force July 1, 1891. * * *

First payment to be made when the first floor joists are laid and covered with lining; second payment when the buildings are under roof; third payment when plastering is done, and the final payment when the buildings are completed and accepted by superintendent and owners. It is agreed by parties that the twenty (20%) per cent agreed to be reserved shall be held by the proprietor as security for the faithful completion of the work, and may be applied, under the directions of the superintendent, in the liquidation of any damages under this contract." These provisions are very indefinite. How much was to be paid at each of the times mentioned is not stated. The twenty per cent clause is rather a recital as to what the agreement was than an express stipulation. We find nothing in the contract, except the clause quoted, which authorized the plaintiffs to retain any portion of the contract price, nor do we understand that section 35, according to which payments were to be made, to contain any provision whatever as to payments. Although the bond contains the proviso that the condition of the building contract is to be carried out by the plaintiffs, there is nothing in the record from which we can determine that they failed to perform it. The contention of counsel is, that if they had strictly complied with the terms as to payments and withholding the twenty per cent, they could have protected themselves against loss without resorting to the bond, and that they owed it to the security to do so. That, we think, is hardly a fair construction of the bond and contract. It would render the bond wholly unnecessary and of little or no benefit to the plaintiffs. If they were bound to protect themselves against loss occasioned by Rafferty's failure to perform the contract by withholding payments, then the security conditioned for his faithful performance would avail nothing.

It is further insisted that the recovery in this case was for the amount due sub-contractors referred to in

the letter of Knight & Brown, heretofore set out, and that there is no liability upon the bond for those claims, they being simply debts contracted by Rafferty. Plaintiff M. Kelter, in connection with his testimony, produced a book which he said contained the business transactions pertaining to the building. He says: "All the work and material mentioned in those receipts went into those buildings involved in this case.

The court: "Did they go in after Rafferty stopped the work?

A. "Some of them before. It is a complete history of the building from the beginning, and shows down to the time that Rafferty quit the job, and it also shows correctly the amount that we paid out to finish the building.

The court: "That is what we want to know and that is the only part we are interested in. That part or those parts which show work and material put into the building after Rafferty stopped, are they all there?

A. "They are all here—everything. * * * By looking at that book and this summary I can tell how much I paid out, in all, for the completion of the building after Rafferty quit. According to this book and this statement it cost us $1400.79 to complete. * * * This is the actual amount that it cost us to build the buildings after Rafferty gave them up. That was all necessarily used in the completion of these buildings according to the contract, plans and specifications, and that finished the buildings in accordance therewith."

This testimony was admitted without objection on the part of the defendant, and clearly tends to sustain the allegations of the declaration and proves a breach of the bond. With the controverted questions of fact we have nothing to do.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*