First Presbyterian Church of Davenport, Iowa, for use, etc., v. O. C. Housel, et al.

Gen. No. 4,318.

1. BOND—*when sureties not discharged from.* Held. under a partic-
ular building contract, that the action of an obligee in paying out cer-
tain moneys for the purpose of paying labor and material bills, did not
operate to discharge the sureties upon the bond given to secure the due
performance of such contract.

Action of debt upon bond. Appeal from the Circuit Court of Knox
County; the Hon. GEORGE W. THOMPSON, Judge, presiding. Heard in
this court at the October term, 1903. Reversed and remanded. Opin-
ion filed June 8, 1904.

WILFRED ARNOLD and GEORGE C. GALE, for appellant; E.
E. COOK, of counsel.

WILLIAMS, LAWRENCE & WELSH and C. C. CRAIG, for ap-
pellees; A. M. CRAIG, of counsel.

MR. JUSTICE FARMER delivered the opinion of the court.
On the 10th of December, 1897, O. C. Housel, of
Galesburg, Illinois, entered into a contract with the First
Presbyterian Church of Davenport, Iowa, to furnish the
materials and build for it a church edifice in the city of
Davenport, Iowa, for the agreed price of $39,610. The
work and materials were to be in accordance with plans and
specifications prepared by the architects who designed the
building. It was stipulated in the contract that Housel
was to receive his pay in monthly installments upon certifi-
cates of the architects, who were to superintend the con-
struction of the building. Those provisions of the contract
relating to the manner of payment were as follows:

" And the second party, for and in consideration of the
first party completely and faithfully executing the afore-
said work, and furnishing all the materials therefor, so as
to fully carry out this contract, and the design, according
to the true spirit, meaning and intent, and by and at the
times mentioned, and to the full and complete satisfaction
of the architects and superintendents, does hereby agree

to pay to said party the sum of thirty-nine thousand six hundred and ten ($39,610) dollars, lawful money of the United States, on certificates of the superintendent, from time to time, as the work progresses, to wit: Eighty-five (85) per cent of the estimated value of the same, subject to additions and reductions hereinafter provided.

" Payments to be made in installments, as the work progresses, on the first day of each month next following the date of beginning work, until said payments aggregate the amount of eighty-five (85) per cent of the total contract price, and the remainder on satisfactory completion and acceptance of the entire work, after the expiration of twenty days.

" It is agreed by the parties that fifteen (15) per cent of the contract price shall be held by the owner as security for the faithful completion of the work, and may be applied, under the direction of the superintendent, in the liquidation of any damage under this contract; also furnishing to the owner a release from any liens or right of lien, by bond, herewith annexed, within ten days from above date, or if requested, a sworn statement, as required by law, before commencing work on this contract."

On the same day the contract was entered into between the parties for the construction of the building. Housel executed a bond to the First Presbyterian Church in the sum of $7,500, with John H. Jerpe, S. S. Jack, S. R. Swanson, and I. P. Norton as sureties, conditioned for his faithful performance of the contract in accordance with its terms and provisions.

While no question of evidence is raised on this record, the proofs taken on the hearing are before us in a bill of exceptions, and show that early in 1898, work was begun on the building by Housel, and between May 1 of that year and October 1, 1899, payments were made on eighteen certificates and estimates of the superintendents. The total of these estimates was $48,669.23, upon which the church paid $39,431.98, substantially the full amount of the contract price. Of this amount $26,372.63 was paid to Housel, and the remainder, on his order, to laborers and material men who furnished the labor and material for the building. After the building had been completed and the amount of

the contract price paid out as stated, there were claims for
liens filed against the church by parties who had furnished
labor or material in its construction, aggregating something
over $9,000, and judgments were rendered upon these claims
in favor of the claimants.    Housel failed and refused to
pay these claims, and it is stated in appellant's brief, " took
advantage of the bankruptcy law."    This suit was brought
by appellant upon the bond before referred to.    Housel,
the principal, died before service was had upon him, and
Jack, one of the sureties, was defaulted.    The other three
sureties pleaded to the declaration.

As the sole question presented for our consideration here
depends upon the construction to be placed upon the con-
tract and bond and the rulings of the court upon appellees'
eleventh plea and appellant's replications thereto, it will not
be necessary for us to notice any of the other issues in the
case.    The eleventh plea in substance avers that Housel
contracted with appellant to erect the building complete for
$39,610; that to secure the performance of the contract he
gave the bond sued on, with appellees as sureties; that by
the terms of the contract, appellant was to pay Housel on
certificates of the superintendent from time to time as the
work progressed until the payments aggregated eighty-five
per cent of the contract price, but was to retain fifteen per
cent thereof until twenty days after the completion and ac-
ceptance of the work; that appellees were sureties only on
said bond, and that said fifteen per cent was a fund to be
held in trust by appellant for the benefit of appellees until
the completion and acceptance of the work according to
the terms of the contract, but that in violation of its duty in
that regard, and without appellees' consent, appellant paid
Housel the entire contract price, retaining no part of the
trust fund in its hands, whereby appellees became and were
released from all liability.

Appellant filed three replications.    These replications
purported to answer both the eleventh and twelfth pleas
but as the twelfth plea was withdrawn, as we shall here-
after see, we will refer to them as replications to the eleventh

First Presbyterian Church v. Housel.

plea. The substance of the amended first replication was
that appellant paid eighty-five per cent of the contract price
on certificates of the superintendent in accordance with the
provisions of the contract, but that said eighty-five per cent
was insufficient to pay for the work done and material fur-
nished, and after such payments, laborers and material men
had claims against the building for work and material fur-
nished in its construction for more than $15,000; that Housel
was insolvent and unable to pay said claims and in order to
prevent liens being filed against the property, appellant paid,
upon Housel's order, to laborers and material men having
such claims, the fifteen per cent of the contract price. The
third replication was similar. The court sustained a de-
murrer to both these replications and appellant abided by
its replications. Issue was joined on the second replica-
tion. The cause was heard by the court without a jury
and taken under advisement. Several days after the hear-
ing was concluded and before the court had announced its
decision, appellees entered their motion for leave to with-
draw their twelfth plea and also a motion to strike from
the files appellant's second replication to the eleventh and
twelfth pleas upon which issue had been joined, for the rea-
son, as stated in the motion, that "the issue presented by
said replication to said eleventh plea is an immaterial one;
that said replication is no answer whatever to the matters
and things set up in the said plea eleven or any other plea
in the case." This motion was not allowed in the form
asked, but an order was entered by the court allowing
appellees to withdraw their twelfth plea and striking the
similiter to the second replication from the files, and appel-
lees were then permitted to demur to said second replication,
which demurrer the court sustained. Appellant abiding by
its replication, left the eleventh plea unanswered, and the
court thereupon rendered judgment in favor of appellees.
The right of the court to make these orders at the stage of
the case they were made, is questioned by appellant, who
insists it was the awarding of a repleader. We do not so
understand it. What the court did was in the nature of

allowing amendments, which is authorized by our statute and the decisions of the Supreme Court. But if it be conceded that the second replication (which was really a reply to the twelfth plea although purporting to answer the eleventh also) was obnoxious to a demurrer because it was no answer to the plea, we are of opinion that the first amended and third replications presented a good reply. The bond was given as security to appellant that Housel would build and complete the church edifice according to the plans and specifications for the price agreed upon. The eleventh plea in effect concedes the proper payment and application of eighty-five per cent of the contract price but avers the sureties on Housel's bond were released because appellant paid out the full amount of the contract price without appellees' consent. We do not think the failure to retain fifteen per cent of the contract price until the completion and acceptance of the work, necessarily operated to release appellees. Whether it did or not would depend upon circumstances. Housel agreed with appellant to furnish all labor and material and to complete the building according to the plans adopted for $39,610, and appellees became security for him to appellant that he would keep and perform the contract. Now suppose he went on and completed the building according to the plans and specifications, but because he took the contract too low, or for any other reason, the cost was a great deal more than the price he had agreed to erect the building for, and suppose he did not pay the excess above the contract price and was insolvent, as the replication alleges he was, would his sureties be injured by the payment for labor and material used in the construction of the building to the full amount of the contract price? If the labor and material actually used in the erection of the church edifice cost $10,000 more than Housel agreed to, construct it for and appellees guaranteed he would do, can they complain that appellant paid out the full amount of the contract price in payment so far as it would go for the labor and material used? How would their condition have been benefited by appellant retaining the

First Presbyterian Church v. Housel.

money till the work was completed? Appellant was liable to those furnishing it, for all the labor and material used in erecting the structure and was obliged to pay for it if Housel did not do so. Appellees argue that if the fifteen per cent had been retained by appellant, Housel would probably have procured that amount from some other source and to that extent reduced the amount of the liens existing when the building was completed. We do not think this position sound. If what probably would or might have occurred if appellant had withheld the fifteen per cent, is proper to be considered, it might be said that there was at least as great probability that if appellant had not paid the fifteen per cent, there would simply have been that much more indebtedness against the building when it was completed. Appellant had a right to have the building completed for $39,610, no matter what the actual cost of building it was, and so long as the money was paid on the actual cost of the building it appears to us it would be immaterial to appellees whether appellant paid the fifteen per cent for labor and material before the work was completed and accepted, or retained it and paid it out afterwards. If it was applied to the payment of the cost of constructing the building it was applied upon that for which the bond made appellees liable and to that extent diminished their liability. Under such circumstances appellees could have had no greater benefit from it if the fifteen per cent had been retained by appellant and turned over to them to apply. In fact it would seem to be to the advantage of appellees that it was paid out for labor and material as payment was demanded, thus avoiding the costs and expenses incident to suits that might have been begun for its collection.

We have examined the authorities cited by both sides and do not consider them conclusive either way of the question involved in this case. The case of Finney v. Condon, 86 Ill. 78, holds that the reserved per cent is as much for the indemnity of the sureties on the bond as for the owner of the building and should therefore be withheld according

to the terms of the contract. It is said in the opinion that a failure so to withhold it would operate as a discharge of the sureties. It should be remembered, however, that in that case the contractors quit the work before its completion and the owner was obliged to engage other parties to complete the work at a considerable cost above the original contract price, and while the court say it was shown by the evidence that the aggregate of all payments made to the original contractor exceeded eighty-five per cent of the contract price, it did not appear that they exceeded eighty-five per cent of the work actually done.

The conclusion of the court was that under the facts shown by the evidence the sureties were not released by the failure of the owner of the building to retain fifteen per cent of the contract price. It is said in the opinion that "the rule of law is well enough settled, but the difficulty consists in the application of the principle to the facts of the defense." While it is not so expressly stated in the opinion, it seems evident to us that the court was influenced in reaching the conclusion it did in the Finney case, by the fact that the payment of the fifteen per cent was made upon work actually done and was therefore not a misappropriation of the fund from the purpose for which it was intended and to which the sureties had a right to have it applied. Perhaps a different conclusion would have been reached if it had been clearly shown that the payments made not only exceeded eighty-five per cent of the contract price but also exceeded eighty-five per cent of the work done and material furnished.

In Central Lumber Co. v. Kelter, 201 Ill. 503, the court say that it is not clear that the contract authorized the withholding of twenty per cent. The provision in the agreement in that case on this subject was as follows: "It is agreed by parties that the twenty per cent agreed to be reserved shall be held by the proprietor as security for the faithful completion of the work," etc. The court say: "These provisions are very indefinite. How much was to be paid out at each of the times mentioned is not stated.

The twenty per cent clause is a recital as to what the agreement was, rather than an express stipulation." In commenting on the contention of counsel that it was the duty of the owners of the building to retain twenty per cent to protect themselves against loss without resorting to the bond and that they owed it to the sureties on the bond to do so, it is said by the court: "That, we think, is hardly a fair construction of the bond and contract. It would render the bond wholly unnecessary and of little or no benefit to the plaintiffs. If they were bound to protect themselves against loss occasioned by Rafferty's failure to perform the contract by withholding payments, then the security for his faithful performance would avail nothing." We think it will be seen from an examination of these cases that while the precise question here was not determined in either of them, yet so far as they have any bearing on this case they are not in conflict with, but support the view we take of the law of the case as applicable to the facts.

If appellees' eleventh plea was good, we are of opinion, as before stated, that the first amended and third replications presented a good reply thereto. But we do not think the plea states enough to constitute a defense and if the demurrer was properly sustained to all the replications it should have been carried back and sustained to the plea. If the plea had alleged that the cost of the building did not exceed the contract price and that appellant had in violation of the contract paid Housel the full amount before completion and acceptance, and that he had failed and refused to pay fifteen per cent of the contract for labor and materials used in the construction of the building it would have presented a complete defense. Circumstances might also be pleaded which would make the payment of the fifteen per cent a defense to some part of the liability of the sureties on the bond. It was the duty of Housel to complete the building and pay and discharge all indebtedness incurred in so doing. By the terms of the bond appellees became liable to appellant in case he failed to fulfill his agreement and appellant should be damaged thereby. The penalty of

the bond was $7,500, and it seems clear to us that if appellant had sustained damages to the full extent of the penalty named, by reason of Housel's failure to perform his contract, appellees would have been liable therefor. We do not question the correctness of counsel's position that appellees had an interest in the fifteen per cent of the contract price authorized to be retained till the completion and acceptance of the work. They were interested in it to the extent of having it applied to the discharge of any claims incurred in the work, which if unpaid might constitute a liability against them. If the money was so expended they had the full benefit of it. Let us suppose the cost of the building had been $7,500 more than the amount Housel contracted to build it for, that the contract price had all been expended in paying for the labor and material used, and the contractor had failed and refused to pay the additional cost of $7,500. Could it be contended that appellees had been prejudiced by the mere fact that the reserved per cent was paid on the cost of the building before its completion? It would in no way prejudice appellees' rights or affect their liability unless the position be taken that the sureties had the right to have the reserved per cent applied to the discharge of any liability that might arise against the bond under any and all circumstances. No such position could be sustained. In the language of the Supreme Court in Central Lumber Co. v. Kelter, *supra*, that would be "hardly a fair construction of the bond and contract. It would render the bond wholly unnecessary and of little or no benefit to plaintiffs."

The contract under consideration provided for appellant's retaining fifteen per cent of the contract price, "as security for the faithful completion of the work and may be applied under the direction of the superintendent in the liquidation of any damage under this contract." If the church cost more than Housel agreed to build it for and he failed and refused to pay the excess, such excess would be to appellant a "damage under this contract," upon which it appears to us it had the right to apply the fifteen per cent without

waiting for the completion and acceptance of the building and without consulting appellees.

The bond was given for the security and benefit of appellant, and it appears to us that to sustain the court's rulings complained of, would be putting a construction upon the bond and contract which might practically defeat the purposes for which it was given.

The judgment is reversed and cause remanded.

*Reversed and remanded.*