THE MERCANTILE TRUST COMPANY *v.* KISER & Co. *et al.*

Where it is essential to the successful prosecution of its business by an immense saw-mill corporation that a short line of railway penetrating the country from which its supply of timber is to be drawn, should be constructed and operated, and this enterprise is undertaken by a railway corporation which issues bonds for the purpose of raising funds by which to construct the railway, the interest on these bonds accruing semi-annually for a part of the period during which they are running to maturity, may, before they are negotiated, be guaranteed by the saw-mill corporation with the express consent and authority of its stockholders and its board of directors, a sufficient consideration for the guaranty being furnished by the advantage to the saw-mill corporation which it derives from the construction and operation of a railway bearing this essential and special relation to the great saw-mill establishment. More especially is this true where most of the stock in both corporations is owned by the same natural persons, and where the management and operations of both companies are under boards composed chiefly of the same directors, and where it was manifestly contemplated from the beginning that in conducting the business, after the completion of the railway, the saw-mill corporation was to dominate the whole and treat the railway as a mere adjunct to the saw-mill business, though the line of the railway extended beyond the timber region, and was used in carrying for the general public as well as for the mill.

May 2, 1893. Argued at the last term.

Before Judge ROBERTS. Dodge superior court. March adjourned term, 1892.

Among the creditors of the Empire Lumber Company was the Mercantile Trust Company, trustee, which by amendment was made a party defendant to the creditors' petition mentioned in the preceding case, and a mortgage held by it on property of the corporation was attacked as void, on the grounds that the corporation had no right under its charter to make the contract or

guaranty therein set forth, and that the guaranty was without consideration. The mortgage was dated February 1, 1889, and was made to secure the payment of the first five years interest of the first mortgage bonds of the Empire & Dublin Railroad Company. It recited that said railroad company was building a railroad, and had executed to said trustee a mortgage or deed of trust covering all its property, and had prepared certain bonds of $1,000 each, with interest coupons; that the Empire Lumber Company had deemed it wise to give its aid in selling the bonds, and at a meeting of its stockholders on January 18, 1889, its directors were authorized to pledge its credit and property to pay the first five years interest on the bonded debt of the railroad, and the board of directors had authorized the president and secretary to execute and deliver all such deeds and documents as might be necessary to fully carry out this purpose. The master to whom the cause was referred found against the mortgage, holding that the charter of the mortgagor gave no authority to make it, that it was without consideration and was a gratuity and in the nature of a gift, that no sufficient reason was given, in the action of the stockholders' meeting, to authorize the execution of the mortgage, and that it was invalid as against the creditors of the mortgagor. He further found that the trustee had a first mortgage on the Empire & Dublin railroad, which was equally accessible, and, so far as the evidence disclosed, that security was amply sufficient to satisfy this claim, and the trustee should not pursue the assets of the mortgagor and jeopardize the rights of other creditors. Exceptions to these findings were taken by the trustee, and the judge overruled them and approved the master's report. For the other material facts see the decision.

Estes & Estes, for plaintiff in error.

Hill, Harris & Birch, DeLacy & Bishop, J. E. Wooten,

Smith & Clements, P. L. Mynatt & Son and John L. Hopkins, *contra.*

Bleckley, Chief Justice.

Most of the stock in both corporations was owned by the same persons, and the management and operations of both companies were under boards composed chiefly of the same directors. Manifestly it was contemplated from the beginning that, in conducting the business after the completion of the railway, the saw-mill corporation was to have the supreme dominion and the railway was to be treated and used as a mere adjunct to the saw-mill business. The line of railway was a short one. It penetrated the country from which the supply of timber for the mill was to be drawn, and it was essential to the successful prosecution of the business contemplated and afterwards done by the great saw-mill establishment. That the railway extended beyond the timber region and was used in carrying for the general public as well as for the mill, did not prevent it from being, as it really was, a substitute for a great number of carriages and teams which, without the railroad, the mill company would probably have had to maintain and use in order to procure its supply of timber. It is no strain upon the charter of a saw-mill corporation to construe it as authorizing the expenditure of money or the creation of debts to procure any means reasonable and appropriate to obtain and keep up a supply of timber needful for carrying on the business and keeping the mill in operation. The guaranty of the semi-annual interest accruing on the railroad bonds for a part of the time those bonds were running to maturity was made with the express consent and authority of the stockholders and directors of the saw-mill corporation. No doubt, this consent and authority were given because without the guaranty the money requisite for constructing the railroad could not be obtained, and unless the railroad was constructed the

stockholders and directors would have to make other arrangements for transporting a supply of timber, which would have been either more expensive or less efficient than would be afforded by the railway. If it was good business or if there was good reason to think that it would be good business on the part of the saw-mill corporation to aid in raising means to construct a railway for use as a timber carrier rather than get its timber carried in some other way, what ground is there for holding that the guaranty of interest on these bonds was *ultra vires?* We see none. A sufficient consideration for the guaranty was furnished by the advantage to the saw-mill corporation which was expected to be derived, and doubtless was derived, from the construction and operation of a railway which, by reason of penetrating the country from which the supply of timber was to be drawn and was drawn, bore an essential and special relation to this particular saw-mill establishment. The primary enterprise was the saw-mill, and connected with it was the railway as a minor and subsidiary enterprise without which, as the evidence indicates, the former could not have hoped to flourish and prove successful. That the saw-mill interest really dominated and controlled the railway and its operations is manifest from the evidence in the record. The one was the parent, the other the child; the one was the master, the other the servant. The court below erred in holding that the guaranty was not obligatory.      *Judgment reversed.*