THE UNITED STATES BREWING COMPANY, Plaintiff in Error, *vs.* THE DOLESE & SHEPARD COMPANY, Defendant in Error.

*Opinion filed June 18, 1913—Rehearing denied October 8, 1913.*

1. CORPORATIONS—*when contract by a brewing corporation is ultra vires.* A corporation organized "to manufacture and sell all kinds of beer, ale and porter, to buy and sell all kinds of brewer's materials and supplies, and to carry on a general brewer's business in all its branches," has no power to contract with a stone-quarry corporation to lease land from the latter and erect a boarding house and saloon for the accommodation of the stone-quarry company's employees, even though the sale of its beer may thereby be increased. (*Heims Brewing Co.* v. *Flannery,* 137 Ill. 309, and *Kraft* v. *West Side Brewery Co.* 219 id. 205, distinguished.)

2. SAME—*when recovery may be had on common counts though contract is ultra vires.* Though a contract by a brewery corporation to erect a boarding house and saloon for a stone-quarry corporation may be *ultra vires* and for that reason the brewery company be unable to enforce a provision of the contract requiring the stone-quarry company to accept the building and pay the cost thereof, yet if the stone-quarry company has accepted the benefits of the contract it is liable, under the common counts, for the reasonable value of the building if the contract itself is not *malum in se* nor *malum prohibitum.*

3. CONTRACTS—*when a contract is not against public policy, as depending upon result of an election.* The fact that a contract between a brewery company and another corporation requires the latter to take over, at cost price, the boarding house and saloon to be built by the former if the district in which the building was located should become prohibition territory, does not render the contract immoral or against public policy as being made in view of a pending election, where, at the time the contract was made, there was no law in existence under which the district could become anti-saloon territory by means of an election.

4. ASSUMPSIT—*when defendant's refusal to take possession of building does not defeat a recovery for its value.* Where a corporation has accepted all the benefits of a contract by which a building was erected at its request and has become liable for the reasonable value of the building, the fact that it refuses to take possession of the building when it is tendered to it but allows it to remain in actual possession of the builder's tenant, who, after the tender of possession was made, paid no rent to the builder but deposited it in a bank, does not excuse such corporation from liability nor defeat a recovery for the reasonable value of the building.

Writ of Error to the Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. Hosea W. Wells, Judge, presiding.

Winston, Payne, Strawn & Shaw, (Walter H. Jacobs, of counsel,) for plaintiff in error.

William J. Pringle, and Edwin Terwilliger, Jr., for defendant in error.

Mr. Justice Farmer delivered the opinion of the court:

Plaintiff in error (hereafter called plaintiff) brought this action of assumpsit in the municipal court of the city of Chicago against defendant in error (hereafter referred to as defendant) for the recovery of $10,000 alleged to be due plaintiff from defendant. Plaintiff is a corporation organized under the laws of Illinois "to manufacture and sell all kinds of beer, ale and porter, to buy and sell all kinds of brewer's materials and supplies, and to carry on a general brewer's business in all its branches." Defendant is a corporation organized "to quarry stone, sand, clay, earth and gravel; to manufacture and deal in stone, brick, lime and cement, and deal also in sand, clay, earth, gravel, sewer and water pipe, stucco, lumber and building materials of all kinds, coal and ice, and to contract for, make and construct public and private improvements in which any such materials are employed, including roads and bridges." Defendant's quarries were near the village of Gary, (or Hodgkins,) in Lyons township, Cook county, about fifteen miles from the business district of the city of Chicago. The village is situated on the Atchison, Topeka and Santa Fe railroad and is about three-quarters of a mile from the quarries. In 1905 there were but few houses in the neighborhood where employees of defendant could live and the transportation facilities for conveying workmen to and from

the quarries were inadequate and inconvenient. Defendant employed between one hundred and two hundred workmen, and in 1905 it employed an architect and caused plans to be prepared for a building it proposed to erect for a boarding house to accommodate its employees. Before any work was done by defendant on the building, negotiations were entered into by it with plaintiff for the construction of the building by plaintiff. These negotiations resulted in an agreement being reached by which plaintiff was to erect the building, part of it to be used as a saloon. On November 5, 1905, defendant leased to plaintiff, for a term commencing January 1, 1906, and ending December 31, 1930, a tract of land described, one hundred feet wide by two hundred feet deep, upon which plaintiff agreed to erect at its own expense and maintain for the term of the lease, unless sooner terminated under the provisions thereof, "a certain building, and to use and operate the same continuously for the entire term aforesaid, as a saloon and boarding house, said building to cost the sum of $6700." Plans and drawings for the building were made part of the agreement. Plaintiff erected an L-building twenty-four feet wide by one hundred and seventy-seven feet long, and an addition twenty feet by thirty feet. The portion of the building devoted to use for boarding house purposes consisted of a kitchen, twenty-four feet by twenty-four feet; a dining room, twenty-four feet by eighty feet; forty-three double bed-rooms, and an apartment for the tenant. The part of the building devoted to saloon purposes was twenty-four feet by thirty feet. The lease contained provisions concerning its termination by defendant upon notice, and for the appointment of appraisers to value the building and make an award for the payment therefor by defendant if it elected to terminate the lease before its expiration, but those provisions are not here involved. The lease provided that "should the district within which the premises herein demised are located become a prohibition or local option district, so that on account

thereof it shall be necessary to suspend the saloon business on said premises within three years from the date of this contract, then no such appraisement shall be made, but said first party [defendant] shall pay to the said second party [plaintiff] the cost price of the building and improvements on said premises, such cost price not to exceed, however, the sum of $10,000." The lease authorized plaintiff to sublet the building, and after its completion plaintiff leased it at a monthly rental of $200, with a provision that if the lessee or his assigns purchased from plaintiff all beer sold on the premises, a deduction or rebate would be allowed of $120 on each month's rent. The building was conducted as a boarding house and saloon from the time of its completion. At the township election held April 7, 1908, the township of Lyons became prohibition or anti-saloon territory, and on April 9 plaintiff notified defendant, in writing, of that fact, demanded the payment of $10,000, and offered to surrender the building immediately upon payment. Defendant did not make the payment and appears to have ignored the demand. This suit was begun for the recovery of $10,000 on August 4, 1908. The declaration consisted of a special count on the contract and the common counts. Defendant pleaded the general issue and a special plea that the contract declared on in the special count was *ultra vires.* The cause was by agreement heard before the court without a jury. The court found the issues for the plaintiff, assessed its damages at $8490.12 and rendered judgment therefor. Defendant prosecuted an appeal to the Appellate Court for the First District, and that court reversed the judgment of the municipal court. The Appellate Court was of opinion the contract was *ultra vires* the plaintiff corporation; that there could be no recovery upon the common counts, under the evidence, upon an implied contract, and the cause was therefore not remanded. A writ of *certiorari* was granted by this court.

The view of the municipal court, as indicated by propositions of law held and refused, was that the contract was *ultra vires* but that plaintiff was entitled to recover the reasonable value of the building under an implied contract. While plaintiff insists it is entitled to recover upon an implied contract if the written contract is *ultra vires,* it contends that said written contract was not *ultra vires,* and this appears to have been the principal theory upon which the case was tried in the municipal court. We agree with the municipal and Appellate Courts that it was beyond the power of plaintiff to make the contract and that the contract is void.

Plaintiff relies upon the rule announced in a number of cases that it is within the power of a corporation to adopt any proper and convenient means tending directly to accomplish the purposes for which it was organized, not amounting to the transaction of a separate, unauthorized business. Among other similar cases, reliance is placed upon *Heims Brewing Co.* v. *Flannery,* 137 Ill. 309, and *Kraft* v. *West Side Brewery Co.* 219 id. 205. In the *Heims Brewing Co. case* the corporation was organized with power "to acquire, own and use all necessary property and means to prosecute and conduct the business of brewing and disposing of beer, with all such powers as shall be essential and incident to the convenient and successful operation of a brewery." It leased a building for a period of five years for saloon purposes. Before the term expired it abandoned the premises and refused to pay the rent. When suit was brought it defended on the ground that the contract was *ultra vires.* A part of the contract with the owner of the building was, that the owner would not engage in the saloon business during the period of the lease nor rent other property owned or controlled by him in the block for saloon purposes. The object of the contract and lease was to promote the business for which the brewery was organized by increasing the sale and consumption of beer manufactured by

it, and it was held the contract was within the powers of the corporation and was valid and binding. In the *Kraft case* the brewery loaned Kraft money to erect a building for a saloon, living apartments for the owner, and for a hall in the upper story. The brewery was to be given a lease upon the premises and no other beer than that manufactured by it was to be sold thereon during the term of the lease. A mortgage was given the brewery to secure the payment of the loan, and when it instituted proceedings to foreclose the mortgage the defense of *ultra vires* was interposed. This court held that the loan was made for a purpose not too remotely connected with the promotion of the business of the brewery and that it was within the implied powers of the corporation.

We do not think the above cases, and others relied upon, sustain plaintiff's contention. It is probably true that the boarding house would be of benefit to the saloon because of increased patronage at the bar, but because a corporation like plaintiff might do some things under its implied powers to promote its business, it does not follow that it may engage in any line of business or occupation not authorized by its charter powers because such business or occupation would promote the business for which the corporation was organized. It would be rather a far stretch of corporate powers to say that a corporation organized to manufacture and sell beer, ale and porter and carry on a general brewer's business in all its branches, could establish and operate boarding houses for the purpose of increasing the sale of its beer. This court said in *Fritze* v. *Equitable Building and Loan Society*, 186 Ill. 183: "By an implied power is meant one that is directly and immediately appropriate to the execution of the specific power granted, and not one that has slight or remote relation to it." In *Best Brewing Co.* v. *Klassen,* 185 Ill. 37, the court said: "Many acts can be suggested which, though beneficial to the business of a corporation, are too remote from its general purposes to be

deemed reasonably within its implied powers. What is and what is not too remote must be determined according to the facts of each case. The rule has been stated to be: In exercising powers conferred by its charter, a corporation 'may adopt any proper and convenient means tending directly to their accomplishment, and not amounting to the transaction of a separate, unauthorized business.' " Here, more than three-fourths of the building and of the investment for its construction was for boarding house purposes, which was a business plaintiff had no power, either express or implied, to engage in. If it did have such power, we cannot see where the line could be drawn against its engaging in any business in connection with its manufacture and sale of beer that would promote that object. In our view of the case no action could be sustained upon the contract.

In *National Home Building Ass'n* v. *Home Savings Bank,* 181 Ill. 35, it was held that where a corporation acts within the general scope of its powers, it, as well as persons dealing with it, may be estopped to deny that it has complied with the legal formalities prerequisite to its existence, but where the contract is beyond the powers conferred upon the corporation by law, neither the corporation nor the party dealing with it can be estopped from asserting that the contract was *ultra vires.* Such a contract cannot be ratified, and the courts can afford no remedy upon the contract by affirming or enforcing it. This was substantially repeated in *Steele* v. *Fraternal Tribunes,* 215 Ill. 190. If plaintiff has any right to recover, therefore, it is not under the written contract, but it is because defendant having received the benefit of the contract, the law implies an obligation on its part to pay what the building is reasonably worth.

In *Leigh* v. *American Brake-Beam Co.* 205 Ill. 147, the American Brake-Beam Company, a manufacturing corporation, loaned its money to individuals and took their notes therefor. The notes not being paid, an action was brought to recover the amount. The declaration contained two spe-

cial counts on the notes and also the common money counts. It was held the corporation had no authority to loan money, that the transaction was *ultra vires,* and no remedy could be enforced upon the contract. A recovery, however, was sustained under the common counts upon a contract implied by law that the borrowers would return the money they had received. After stating that no action could be maintained upon the contract, the court said (p. 152) : "That rule of law, however, does not prevent a recovery from the defendant of the moneys of the plaintiff received by him. Although a party is not liable to pay according to a contract which is *ultra vires,* that fact is not permitted to work injustice where the law can afford a remedy without enforcing the illegal contract, and the courts will give relief where it can be given independently of the contract. It would be unjust to hold that one who has received money or property under a contract which is *ultra vires* need not account for it because the contract was illegal, but the law implies a contract to return what has been received. Where a contract is not *malum in se* or *malum prohibitum,* and it has been executed or benefits have been received, the party benefited, whether the corporation or individual, will not be permitted to retain the fruits of the transaction without compensation. It has sometimes been said that where the contract has been in good faith fully performed by one party, the other party, who has had the benefit of the performance of the contract, will be estopped to plead its invalidity. (*Bradley* v. *Ballard,* 55 Ill. 413; *Darst* v. *Gale,* 83 id. 136; *Kadish* v. *Garden City Building Ass'n,* 151 id. 531.) Although this has been said in cases where the contract was not *ultra vires* in the proper sense, and the language was not, perhaps, strictly accurate, it was intended to declare the sound and wholesome doctrine that a party can not retain the benefits, money or property received under a contract which is void merely for want of power to enter into it, without making compensation therefor. Where a

contract is *ultra vires,* and a corporation has received money under it which in equity and good conscience belongs to another and which it ought to pay over, it is liable for it in an action for money had and received, with interest after demand. (*Brennan* v. *Gallagher,* 199 Ill. 207.) The converse of the proposition is equally true, and an action for the recovery of the money would not enforce or affirm the original contract but would disaffirm it. (27 Am. & Eng. Ency. of Law, 376.) As said by the Supreme Court of the United States in. *Central Transportation Co.* v. *Pullman Palace Car Co.* 139 U. S. 24: "The action is not maintained upon the unlawful contract nor according to its terms, but on an implied contract of the defendant to return, or, failing to do that, to make compensation for property or money which it has no right to retain. To maintain such an action is not to affirm, but to disaffirm, the unlawful contract.' The recovery in this case was for moneys had and received by the defendant for the use of the plaintiff, and this action will lie whenever one person has received money which in justice and right belongs to another and which should be returned. It is an equitable action to recover back money which the defendant ought to refund."

Under the rule above announced, which is well supported by authority, we are of opinion the plaintiff was entitled to recover under the common counts the reasonable worth of the building. *Pullman Palace Car Co.* v. *Central Transportation Co.* 171 U. S. 138.

The contract was not immoral nor contrary to public policy because it might be determined by the result of an election. At the time it was made there was no law authorizing a township to vote upon the question of becoming anti-saloon territory, and no election was held upon that question for two and a half years after the contract was entered into. It was not, therefore, made in view of a pending election, but was merely a precautionary provision for the protection of plaintiff in the event of its being made

unlawful, within three years, in Lyons township, to sell intoxicating liquors.

It is also insisted by defendant that there can be no recovery because it is not in possession of the building, or was not at the time of the trial, but that the tenant of plaintiff continued in possession thereof. When plaintiff elected to determine the lease because the township had become anti-saloon territory and demanded payment of $10,000 it tendered defendant the building upon the payment of the money. Defendant neither paid nor took possession of the building, and at the time of the trial it was still occupied by the tenant to whom plaintiff had rented it. He testified he had never paid plaintiff any rent after its notice to and demand upon defendant but that he was instructed by plaintiff to deposit the rent money in the bank at LaGrange. We do not think defendant could defeat its liability to plaintiff by refusing to take possession of the building. So far as this record shows, defendant was receiving, all the time since April, 1908, the benefits for which it leased the ground to plaintiff and upon which the building was erected.

On the trial of the case in the municipal court no proof was offered of the reasonable value of the building. Plaintiff insisted upon its right to recover the cost price of the building, not to exceed the sum of $10,000, and only offered proof as to the cost of the improvement. The trial court disallowed the cost of constructing out-buildings, amounting to $1025, the cost of a hot-air pump, and some other items, reducing the amount of the judgment as rendered to $8490.12. The items disallowed by the court were disallowed for the reason that the court was of opinion they were not contemplated by the parties when the lease was made. The judgment, as we understand it, is for the cost of what the court understood to be the building proper, and was not for its reasonable value at the time of the

termination of the contract. The cost and the reasonable value are not necessarily the same. There was no basis in the proof for a judgment for the reasonable value of the improvement, and the court erred in rendering judgment for the amount the improvement cost.

We think the Appellate Court properly reversed the judgment, but in our opinion the case should have been remanded to the municipal court for another trial. The judgments of the Appellate and municipal courts are reversed and the cause remanded to the municipal court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*