[L. A. No. 6055.   Department One.—August 10, 1920.]

WOODS LUMBER COMPANY (a Corporation), Respondent, v. W. H. MOORE, Jr., as Trustee, etc., Appellant.

[1] CORPORATIONS — EXECUTION OF CONTRACTS — IMPLIED POWER.—A corporation engaged in carrying on a business which it is authorized .to do by its articles and the law under which it is organized has implied power to make all contracts which are essential to the successful prosecution of the business, or the making of which is an appropriate means by which it may be reasonably expected that the business in which the corporation is engaged will be advanced, or which are necessary and helpful to the conduct of its authorized business, or which tends directly to promote the business authorized by its articles, and which it is doing.

[2] ID.—CONTRACT OF GUARANTY—SCOPE OF IMPLIED POWERS—QUESTION FOR CORPORATION.—The question whether or not a contract of guaranty comes within the implied powers of a corporation is one which is to be primarily determined by the corporation, or those to whom the management of its affairs is intrusted, and the courts cannot determine that it is beyond the powers of the corporation unless it clearly appears to be so as a matter of law.

[3] ID.—GUARANTY OF LUMBER BILL OF MOTION PICTURE COMPANY— IMPLIED POWER OF THEATRICAL COSTUME COMPANY.—A corporation engaged in the business of selling and renting costumes for theatrical productions has implied power to guarantee the payment

CLXXXIII—32

of a bill of a motion picture company for lumber to be used in the production of a film, where the former is the owner of a contract for the furnishing of the costumes for the picture.

[4] ID.—EXECUTION OF CONTRACT—AUTHORITY OF PRESIDENT AND MANAGER.—A contract of guaranty of a corporation signed by its secretary by direction of its president and business manager is binding upon the corporation, although not previously authorized by the board of directors, where such president and manager is permitted to direct and control the corporate affairs.

[5] ID.—AUTHORITY OF CONTRACTING OFFICERS—MANNER OF PROOF.—The authority of an officer or agent of a corporation to make contracts in its behalf may be shown by proof of conduct and without resort to the minutes of its board of directors, or even where the minutes do not speak on the subject.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Affirmed.

The facts are stated in the opinion of the court.

Adams, Adams & Binford, G. Harold Janeway, Hunsaker, Britt & Edwards and Samuel Poorman, Jr., for Appellant.

R. W. Clapp for Respondent.

SHAW, J.—The defendant appeals from the judgment.

The plaintiff sued to recover of Goldstein Company, as guarantor, the sum of $2,845.55 owing to plaintiff from Continental Producing Company for building materials and merchandise bought of plaintiff by said Continental Company. The guaranty contract alleged to have been executed by Goldstein Company is as follows:

"Jan. 6, 1917.

"Woods Lumber Company,
     "Beverly Hills, Calif.
"Gentlemen:

"This is to confirm conversation Mr. Woods had with R. Goldstein on the afternoon of the 4th inst., guaranteeing the payment of all bills which you have or will have against the Continental Producing Co., 650 S. Broadway St., city.

"Yours very truly,
     "GOLDSTEIN COMPANY, LOS ANGELES, INC.
          "By L. C. ARMBRUST, Secretary."

Goldstein Company was the original defendant, but during the pendency of the action it was adjudged a bankrupt and the defendant Moore was appointed trustee in bankruptcy and substituted as defendant.

The answer alleged that the guaranty contract above set forth was given without consideration and for accommodation only; that the officer of defendant corporation that executed the same had no authority to do so, and that the guarantee of said Continental Producing Company's debts was not within the scope of the Goldstein Company's business. The court below made findings to the effect that the guaranty contract was given for a valuable consideration; that the officer who executed it was duly authorized to do so, and that the making of said guaranty contract was within the scope of the said Goldstein Company's corporate powers.

The appellant claims that the evidence shows: (1) That the contract of guaranty was not within the scope of the powers of the corporation as set forth in its articles, nor in direct furtherance of its business, and consequently that it is *ultra vires*. (2) That the said Goldstein Company received no benefit from the making of said guaranty and is therefore not estopped to assert that it was *ultra vires*. (3) That the officers who executed the contract had no authority to bind the corporation thereby.

The articles of incorporation of Goldstein Company stated that it was incorporated "to manufacture, . . . buy, sell, lease, or otherwise acquire, and generally deal in all kinds of goods, wares, merchandise, and property of every class and description; to construct, purchase, lease or otherwise acquire, . . . operate, maintain and conduct theaters, concert-halls, and amusement places of all kinds and descriptions; to manage theatrical, concert-hall and vaudeville companies of all kinds; . . . and to purchase, own, produce and present theatrical plays, operas and exhibitions of all kinds." The principal business in which the Goldstein Company was engaged at and before the making of this guaranty was the selling and renting of costumes to persons engaged in the operation of theaters or shows and to persons engaged in the manufacture of films for moving picture shows. The Continental Producing Company was engaged in manufacturing films for the production by moving pictures of a play entitled "The Spirit of '76." On May 31, 1916, the Gold-

stein Company and the Continental Producing Company entered into a contract whereby the Goldstein Company agreed to sell and furnish to the Continental Company the costumes and other similar articles necessary for the production of this film. The contract price the Goldstein Company was to receive therefor amounted to eight thousand three hundred dollars. In producing the film it was necessary for the Continental Company to buy a large amount of lumber and building materials for the erection of structures to be shown in the pictures. The Woods Lumber Company had arranged to furnish such materials to the Continental Company, as required. Robert Goldstein was president of the Goldstein Company and the principal stockholder therein. L. C. Armbrust was the secretary. Goldstein was also a stockholder in the Continental Company. Although the evidence is conflicting on the subject, it is sufficient to show that Goldstein was at that time acting as the manager of both companies and was actively superintending the work of the Continental Company in producing the films and was also controlling the operations of Goldstein Company. Woods Lumber Company began furnishing building materials to the Continental Company in September, 1916. Payments were made from time to time, but in the latter part of December the Continental Company was delinquent in payments. Thereupon W. E. Woods, manager of the Woods Lumber Company, informed Goldstein that the Woods Lumber Company would give the Continental Company no further credit and would furnish it no more materials, unless Goldstein Company would guarantee the payment of the bills of the Continental Company for materials to be furnished to it by Woods Lumber Company. Goldstein Company was at that time financially interested in the success of the proposed moving picture then being made by the Continental Company, by reason of the fact that if the Continental Company was unable to go on with that enterprise, it would not order any more costumes from the Goldstein Company under the contract aforesaid. This, at least, was a fair inference from the evidence. Goldstein, in reply to the statement by Woods, said his company would execute such guaranty. In pursuance of this promise and by order of Goldstein to Armbrust, the secretary, the guaranty contract above quoted was executed by the secretary and delivered to Mr. Woods for the

Woods Lumber Company. The evidence is in conflict on these points, but there is substantial evidence to the effect stated. Thereafter the Woods Lumber Company, on the faith of this guaranty, furnished materials to the Continental Company to the amount herein sued for, and the indebtedness thereby created was not paid.

1. The articles of incorporation of Goldstein Company gave it power to make films for moving picture plays and to exhibit them to the public and also to build structures for the purpose of making such films. This fact, however, did not empower it to guarantee the obligations of other persons or corporations engaged in such business. It was not authorized to make contracts of guaranty as an independent business. It had no express power to make such contracts. The guaranty in question can be upheld as binding upon it only upon the theory that under the circumstances existing at the time it was within its implied powers.

[1] A corporation engaged in carrying on a business which it is authorized to do by its articles and the law under which it is organized has implied power to make all contracts which are "essential to the successful prosecution of the business" (Civ. Code sec. 354, subd. 8; *Bates* v. *Coronado B. Co.,* 109 Cal. 163, [41 Pac. 855]; *Mercantile Trust Co.* v. *Kiser,* 91 Ga. 636, [18 S. E. 358]), or the making of which is an appropriate means by which it may be "reasonably expected that the business in which the corporation is engaged will be advanced" (*Depot R. Synd.* v. *Enterprise B. Co.,* 87 Or. 560, [L. R. A. 1918C, 1001, 170 Pac. 294, 171 Pac. 223]); or which are "necessary and helpful to the conduct of its authorized business" (*Timm* v. *Grand Rapids B. Co.,* 160 Mich. 371, [27 L. R. A. (N. S.) 186, 125 N. W. 357]), or which tends directly to promote the business authorized by its articles and which it is doing. (*Kraft* v. *Brewery Co.,* 219 Ill. 205, [76 N. E. 372]; *Central L. Co.* v. *Kelter,* 201 Ill. 503, [66 N. E. 543]; *Blue Island B. Co.* v. *Fraatz,* 123 Ill. App. 26; *Horst* v. *Lewis,* 71 Neb. 365, [98 N. W. 1046, 103 N. W. 460].)

[2] The question whether or not a contract of guaranty comes within the reasons above mentioned is one which is to be primarily "determined by the corporation, or

those to whom the management of its affairs is intrusted.'' (*Bates* v. *Coronado B. Co., supra.*)   The court cannot determine that it is beyond the powers of the corporation unless it clearly appears to be so as a matter of law. With respect to the means which the corporation may adopt to further its objects and promote its business its managers ''are not limited in law to the use of such means as are usual or necessary to the objects contemplated by their organization, but, where not restricted by law, may choose such means as are convenient and adapted to the end, though that be neither the usual means, nor absolutely necessary'' for the purpose intended. (*Winterfield* v. *Cream City B. Co.*, 96 Wis. 239, [71 N. W. 101].)

For illustration: A sawmill corporation may guarantee bonds of an auxiliary railway corporation formed to build a railroad penetrating the country from which the ' sawmill company expected to obtain its timber. (*Mercantile Trust Co.*, v. *Kiser, supra.*)   A brewing company can lawfully guarantee the payment of rent of a saloon-keeper who has agreed to sell the beer of the brewing company exclusively, or the rent of a hotel which was one of the brewing company's customers, or the bond required by the state law of a liquor dealer who was one of its customers, or notes of a saloon-keeper to obtain money from a third person for the erection of a saloon building in which he had agreed to sell exclusively the beer of the guarantor, or when by such contract the brewing company creates for itself a new customer and an additional outlet for its product. (*Depot R. Synd.* v. *Enterprise B. Co., supra; Winterfield* v. *Cream City B. Co., supra; Timm* v. *Grand Rapids B. Co., supra; Kraft* v. *Brewery Co., supra; Blue Island B. Co.* v. *Fraatz, supra; Holm* v. *Lipsius B. Co.*, 21 App. Div. 204, [47 N. Y. Supp. 518]; *Koehler* v. *Reinheimer*, 26 App. Div. (N. Y.) 1; *Horst* v. *Lewis, supra; Miller* v. *Northern B. Co.*, 242 Fed. 164; *McQuaide* v. *Enterprise B. Co.*, 14 Cal. App. 315, [111 Pac. 927].)   A lumber company may become surety on the bond of a building contractor to induce him to purchase of the lumber company the lumber used in such building. (*Central L. Co.* v. *Kelter*, 201 Ill. 503, [66 N. E. 543].)

There is a seeming conflict of authority on this subject, but, except for a few cases, it is more apparent than real. In the following cases the guaranty was not shown to be directly connected with or beneficial to the authorized business carried on by the company, and the question of implied power was not discussed: *Memphis etc. Co.* v. *Memphis R. R. Co.*, 85 Tenn. 703, [4 Am. St. Rep. 798, 5 S. W. 52] ; *Lucas* v. *White Line Tr. Co.*, 70 Iowa, 541, [59 Am. Rep. 449, 30 N. W. 771] ; *Norton* v. *Derry Nat. Bank*, 61 N. H. 589, [60 Am. Rep. 334] ; *Wheeler* v. *Home Sav. Bank*, 188 Ill. 34, [80 Am. St. Rep. 161, 58 N. E. 598; *Bank* v. *Winchester*, 119 Ala. 168, [72 Am. St. Rep. 904, 24 South. 351] ; *Morgan* v. *Missouri etc. Co.*, 50 Tex. Civ. App. 420, [110 S. W. 978]. There are other ''border line cases,'' where it was held that benefit from the guaranty was too remote or too indirect to justify the conclusion that it was within the implied powers. The following are of this class: The fact that the operation of a railroad and a street-car line would each tend to increase the population of the city and the business over each road did not authorize either company to guarantee the bonds of the other. (*Northside R. Co.* v. *Worthington*, 88 Tex. 562, [53 Am. St. Rep. 778, 30 S. W. 1055].) A railroad company cannot make a guaranty to enable a hotel company to build a summer hotel on its line merely because the guests of the hotel would probably travel on the railroad and increase its business and profits. (*Western etc. Co.*, v. *Blue Ridge Co.*, 102 Md. 321, [111 Am. St. Rep. 362, 2 L. R. A. (N. S.) 887, 62 Atl. 351].) A brewing company could not erect a building for a boarding-house and saloon for rent, in order that the saloon-keeper might buy its beer. (*United States B. Co.* v. *Dolese*, 259 Ill. 274, [47 L. R. A. (N. S.) 898, 102 N. E. 753].) A few cases are directly contrary to the weight of authority. (*Twiss* v. *Guaranty L. Assn.*, 87 Iowa, 730, [43 Am. St. Rep. 418, 55 N. W. 8] ; *Anheuser-Busch B. Assn.* v. *Heistand*, 177 Fed. 197, [101 C. C. A. 367] ; *Davis* v. *Old Colony Co.*, 131 Mass. 258, [41 Am. Rep. 221].) In each of the other cases the doctrine of implied powers was recognized. In *Best B. Co.* v. *Klassen*, 185 Ill. 37, [76 Am. St. Rep. 26, 50 L. R. A. 765, 57 N. E. 20], where the benefit to the corporate business was held

to be too remote, the court said that the question as to such contract being within the implied powers was one to "be determined according to the facts of each case," and that such guaranty must be a means tending directly to promote the corporate business "and not amounting to a separate unauthorized business." The doctrine we are following was thus recognized.

[3] The case presented by the record comes clearly within the principle of the first-mentioned cases. The Goldstein Company was in the business of selling theatrical costumes and had a pending contract with the Continental Company for the sale of a large amount of such costumes, presumably for a good profit. It was directly interested in the continuance of the business by the Continental Company and in the success of the enterprise of producing the proposed play. The circumstances are such as to create the inference, which the court might reasonably have drawn, that the payment of the expenses of the Continental Company in producing the film for the play, including the price of the costumes aforesaid, was very largely dependent upon its completion and its successful production. The expressed purpose of the Lumber Company to refuse further credit to the Continental Company threatened to stop the entire enterprise, both that of the Continental Company in manufacturing the film and that of the Goldstein Company in selling the costumes therefor. The manager of the company reasonably concluded that this could only be prevented by making the guaranty in question. In a business view the guaranty appeared to be essential to enable the Goldstein Company to obtain payments upon its contract with the Continental Company. It was to be reasonably expected that the making of the guaranty would advance the business of the Goldstein Company and would secure to it the payment of the debt that would be due to it from its customer, the Continental Company. It was a thing helpful to the conduct of its business and tended directly to promote the same. All of these things are held in the foregoing cases to be sufficient to bring the contract of guaranty within the scope of the implied powers of a corporation. We are of the opinion that the guaranty was a valid contract of the Goldstein Company.

2. It is apparent from what we have said that the Goldstein Company had what it deemed to be good reason to expect a substantial benefit from the making of the guaranty. As we have held that it had implied power to do so, under the circumstances, it is not necessary to consider the question whether or not the benefit was sufficient to create an estoppel to prevent it from asserting that it was *ultra vires.* If any consideration was necessary to make the guaranty binding, the selling of more lumber by the plaintiff to the Continental Company in reliance thereon was sufficient for that purpose. (Civ. Code, secs. 1605, 1606, 2792.)

[4]  3. Under the circumstances shown by the evidence, it was not necessary for the plaintiff to prove that the guaranty contract was directly authorized by the board of directors of Goldstein Company, or that it was ratified by them. It was signed by the secretary by the direction of R. Goldstein, the president and business manager of the corporation; the man who, apparently, had the power to direct and control, and who did direct and control, its affairs and business. Woods knew this and relied upon it in accepting the guaranty and furnishing the lumber in reliance upon it. [5] The authority of an officer or agent of a corporation to make contracts in its behalf may be shown by proof of conduct and without resort to the minutes of its board of directors, or even where the minutes do not speak on the subject. "It may be shown by evidence that the person does business for the corporation and on its behalf, as agent, with the knowledge and acquiescence of its directors. . . . The company, in such a case, is bound by his acts within the scope of the business intrusted to him." (*Venice* v. *Short Line etc. Co.,* 180 Cal. 447, [181 Pac. 658].) "If a corporation allows its officers to conduct its business and third persons act upon the apparent authority thus shown, it cannot defeat the rights of such persons arising from transactions done and completed under such ostensible authority by failing to enter upon its minutes any order giving its officers authority to act." (*Fowler Gas Co.* v. *First Nat. Bank* (*Weber*), 180 Cal. 471, [181 Pac. 663], citing *Fresno etc. Co.* v. *Southern Pac. Co.,* 135 Cal. 202, [67 Pac. 773]; *Blood* v. *La Serena L.*

*Co.,* 134 Cal. 370, [66 Pac. 317]; *Crowley* v. *Genesee
M. Co.;* 55 Cal. 276.) We find no error in the record.
The judgment is affirmed.

Olney, J., and Lawlor, J., concurred.