## Provident Stores' Receiver v. Tanner.

(Decided November 20, 1928.)

## Appeal from Boone Circuit Court.

1. Corporations.—Corporations have right to contract debts or borrow money for purpose of accomplishing purposes of their organization, even though not expressly granted by their charters.

2. Corporations.—Where president and owner of most of stock of corporation borrowed plaintiff's stock in another corporation to use as collateral to obtain loans of money for corporation, and agreed to pay her $55 per month, fact that, after he got stock, he did not hypothecate it to secure loan, but sold it contrary to his agreement with plaintiff, did not affect validity of contract.

3. Contracts.—Writing acknowledging receipt from plaintiff of stock of certain corporation as loan for year, signed by corporation, followed by president's name, showed that contract for loan of stock whereby plaintiff was to receive $55 per month for use of stock was made with corporation, and not with president individually, so that she had right to look to corporation for compensation for her loss.

4. Corporations.—Corporation, having power to borrow money, had power to make contract to borrow plaintiff's stock in another corporation to be used as collateral to obtain loans of money and to pay plaintiff $55 per month for use of stock.

5. Corporations.—Where president of corporation, within scope of apparent authority, borrowed plaintiffs stock in another corporation for purpose of using it as collateral to obtain loans of money for corporation, and sold plaintiff's stock, and spent proceeds, but not in business of corporation, corporation was liable, since as between it and an innocent third party it is bound by act of president within scope of apparent authority committed to him.

S. W. TOLIN for appellant.

D. E. CASTLEMAN and J. L. VEST for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

The Provident Stores is a corporation formed in Ohio on June 9, 1926, for the purpose of operating a chain of retail stores. By the articles of incorporation, the stock of the company was limited to 6,000 shares of $1 each. The two attorneys who prepared the articles and two persons in their office took one share each. Louis R. Cranwell took the other 5,996 shares. Five hundred dollars was paid in, and the company began business. It

established one store in Cincinnati and three in Kentucky, one of which was at Florence in Boone county. Louis R. Cranwell was in fact the company. After he started the store in Florence, he became acquainted with Mrs. Fannie Tanner, and learned that she had 140 shares of stock in the National Biscuit Company. He told her that the Provident Stores needed some money to increase its business, and proposed to borrow her stock, so that he could use it as collateral to obtain loans of money. She was 81 years old; her husband was 90 years old. He agreed that the corporation would pay them $55 a month for the use of the stock, which was more than the dividends they were receiving. After consulting her husband, she consented to make the loan, and, on August 27, 1926, she gave him the stock with her name signed on the back, and he executed to her the following writing:

> "August 27, 1926. Received from Mrs. Fannie Tanner 140 shares of National Biscuit Company as a loan for one year. The Provident Stores Inc., Louis R. Cranwell."

The corporation paid her the $55 a month for some months, and then became insolvent, and she brought this action to recover the value of her stock, and took out an attachment and attached the store at Florence. The store sold for something over $1,300, and on final hearing the court gave her a judgment against the corporation for the value of her stock, and adjudged to her the proceeds of the sale as a credit on the judgment. The receiver of the corporation, who was appointed pending the action, and was then made a defendant to it, appeals.

The chief reason urged for reversal is that the transaction with Mrs. Tanner was beyond the power of the corporation, and therefore the corporation is not bound by the contract. It is undisputed that the stock had been disposed of by Cranwell and the money spent by him, but not in the business of the corporation. The purpose of the corporation was to own and operate a line of chain stores. To carry on such a business a large amount of money is necessary. The corporation had only a paid up capital of $500 when it began, and everybody connected with it must have contemplated that the corporation would borrow money to carry on its business. In Fidelity Trust Co. v. Louisville Gas Co., 118 Ky. 592, 81 S. W. 928, 26 Ky. Law Rep. 401, 111 Am. St. Rep. 302,

this court thus states the rule as to the power of a corporation to borrow money:

"The rule is well recognized that corporations, other than those organized for governmental purpurposes, have the right to contract debts or borrow money for the purpose of accomplishing the purposes of their organization. The power exists, although not expressly granted by their charters, as fully as possessed by individuals. They also have the power to give the customary evidences of debt, and the customary security therefor. This power is only limited by provisions of their charters or statute. It would be a meaningless thing to grant a corporation a charter empowering it to conduct a certain enterprise, and then say that the right to obtain the means necessary to the execution of the purposes of its organization was impliedly denied by the charter."

To same effect see 3 Cook on Corporations, sec. 760; 3 Thompson on Corporations, secs. 2240-2242; Woods Lumber Co. v. Moore, 183 Cal. 497; 191 P. 905, 11 A. L. R. 549; 7 R. C. L. p. 593, sec. 587.

In determining the validity of the transaction before us, regard must be had to the real facts of the case. Cranwell was in fact the corporation. No one else had any real interest in it when it was incorporated, and it does not appear that the nominal directors ever took any real control of the business. Cranwell took charge of it and managed it. He needed money. He had power to borrow the money, and needing some collateral to put up as security for the loan, he had the power in the name of the corporation and for the corporation, to do what was reasonably necessary to get the money for the corporation. The fact that, after he got the stock he did not hypothecate it to secure a loan but sold it, contrary to his agreement with Mrs. Tanner, in nowise affected the validity of the contract he made with her. She made the contract with the corporation, and not with Cranwell individually. The writing shows this, and she has the right to look to the corporation for compensation for her loss The corporation having the power to borrow money to carry on the extensive business it planned, had the power to do the things reasonably necessary to enable it to borrow the money. "Inasmuch as the same rule of finance is generally applied toward corporations when applying

for a loan as is applied towards individuals under the same circumstances, namely, the necessity of executing an evidence of indebtedness and producing security for the proposed loan, it has been found necessary by the courts to announce it to be the rule of law that the power to issue notes, bonds, mortgages or other evidences of indebtedness or security therefor follow as an incident to an implied power of a corporation to borrow money." 7 R. C. L. p. 596, sec. 589.

The corporation, having the power to borrow money, might have given a note to the bank with Mrs. Tanner as its surety. To borrow Mrs. Tanner's stock for this purpose was in effect to make her surety for the loan, and was no less within the power of the corporation, for it had the power to do what was reasonably necessary; and, as between it and an innocent third party, it will be held bound by the act of its president within the scope of the apparent authority committed to him.

Judgment affirmed.