## METROPOLITAN CASUALTY INSURANCE COMPANY OF NEW YORK AND THE BISHOP COMPANY, LIMITED, v. REALTY DEVELOPMENT COMPANY, LIMITED, AND LYMAN H. BIGELOW, TERRITORIAL HIGHWAY ENGINEER.

### No. 2083.

ARGUED JANUARY 31, 1933.                    DECIDED MARCH 8, 1933.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

This is a bill in equity brought by Metropolitan Casualty Insurance Company of New York, a judgment creditor, to cancel three trust deeds executed by the Realty Development Company, Limited, the judgment debtor, conveying the lands therein described to Lyman H. Bige-

low, territorial highway engineer, to be held by him in trust for certain designated purposes. The Bishop Company, Limited, a corporation and a judgment creditor, was allowed by intervention to also become a party complainant. The realty company did not appear by answer or otherwise and a decree *pro confesso* was entered against it. Bigelow filed an answer and thus the suit was brought to issue. The circuit judge, after a hearing on the merits, entered a decree dismissing the bill for want of equity. The complainants appealed.

The first question presented is whether the execution of the trust deeds was within the corporate powers of the realty company. The facts out of which this question arises are as follows: The National Construction Company, Limited, an Hawaiian corporation, was the lowest bidder for the construction of a portion of the Kamehameha highway, designated "Job 4057," and was, upon the execution of a satisfactory bond, entitled to be awarded the contract for this work by the Territory of Hawaii acting through Lyman H. Bigelow, the territorial highway commissioner. The construction company, in compliance with statutory requirement, posted a bond for the performance of its obligations under the contract. The sureties on this bond were deemed by Bigelow to be financially insufficient and therefore, as further security against any loss that might occur to those for whose protection the bond was given, he required that the three trust deeds referred to be executed. At the time the trust deeds were executed the construction company had outstanding an issue of 2500 shares of its capital stock. Of this number the realty company was the owner of 550 shares. The president and treasurer and one of the directors of the realty company was C. W. Winstedt, who was also the president and a director of the construction company.

It is the contention of the appellants that the realty company had no power under its articles of incorporation to execute the trust deeds and therefore they are void. If this power exists it is conferred by subsection 5d of article III. This subsection is as follows: "To guarantee the payment of dividends or interest on any shares, stocks, bonds, debentures or other securities issued by, or the performance of any contract or obligation of any person, firm or corporation whenever proper or necessary in furtherance of the business of this corporation or the business of any associated person, firm or corporation and conformably with law; and in such connection to hold for investment or otherwise to use, acquire, sell or dispose of any stocks, bonds or other obligations of any other corporation associated with this corporation or otherwise, and in furtherance of the business of this corporation and of any other person, firm or corporation associated therewith, to act as surety upon the bonds of such persons, firms or corporations, and to aid in any manner any corporation whose stocks, bonds or other obligations are held or in any manner guaranteed by this corporation, and to do any acts and things for the preservation, protection, improvement or enchancement of the value of any such stocks, bonds, or other obligations or designed for any such purpose." This clause expressly confers upon the realty company the power to guarantee the contracts of other corporations provided such contracts are proper or necessary in the furtherance of its business.

It cannot be denied, of course, that one of the purposes for which this company was created and one of the many business enterprises in which it was authorized to engage was that of buying, owning, selling and otherwise dealing in the stocks of other corporations. This is apparent from subsection 3 of article III of the articles

of association, where the power is given "to buy, sell, negotiate, pledge, trade and deal in and with shares, stocks, debentures, script, bonds and securities of all kinds of any government, state or public or private corporation or of any corporate body." Under this authorization the realty company lawfully became the owner of, and, at the time the trust deeds were executed, held the 550 shares of the capital stock of the construction company already mentioned. The only conceivable purpose the realty company could have had in executing the trust deeds was to enable the construction company to obtain a contract which if successfully performed would increase the value of its capital stock, a considerable portion of which was owned by the realty company. If the anticipations of the realty company had been realized it would have received a financial benefit and its business would have been correspondingly furthered. The guaranty, therefore, was not a mere gratuity but was intended to enrich the guarantor, and under its charter was an authorized means of doing so. Whether it was also a proper and necessary means we think was for the determination of the corporation itself.

In *Woods Lumber Co.* v. *Moore*, 183 Cal. 497, the Continental Producing Company was engaged in producing moving pictures. The Goldstein Company, a corporation, was engaged in the manufacture, sale and renting of theatrical equipment. One of its customers was the continental company. The continental company wished to buy lumber from the Woods Lumber Company to be used by it in the erection of a building necessary for the production of a picture called "The Spirit of '76." The lumber company refused to furnish the lumber unless payment was guaranteed by the Goldstein Company. The guaranty was given. In a suit by the lumber company on the guaranty the defense of *ultra vires* was set up. The

question presented was whether under its charter the Goldstein Company had the implied power to make the guaranty as a means of promoting its own business. In deciding that it had such power the court said (pp. 501, 502): "The question whether or not a contract of guaranty comes within the reasons above mentioned is one which is to be primarily 'determined by the corporation, or those to whom the management of its affairs is intrusted.' (*Bates* v. *Coronado B. Co., supra.*) The court cannot determine that it is beyond the powers of the corporation unless it clearly appears to be so as a matter of law. With respect to the means which the corporation may adopt to further its objects and promote its business its managers 'are not limited in law to the use of such means as are usual or necessary to the objects contemplated by their organization, but, where not restricted by law, may choose such means as are convenient and adapted to the end, though that be neither the usual means, nor absolutely necessary' for the purpose intended. (*Winterfield* v. *Cream City B. Co.,* 96 Wis. 239 [71 N. W. 101].)"

Several cases are cited by appellants in suport of their contention that the guaranty in the instant case was *ultra vires.* In all these cases it was sought to support the guaranty as being the exercise of an implied power. In each case the court held that the power was not implied and therefore the guaranty was void. For instance, in *Humboldt Mining Co.* v. *American Manufacturing, Mining & Milling Co.,* 62 Fed. 356, it was claimed by the plaintiffs that the power of the guaranteeing corporation to make the guaranty was implied in a statute from which its powers were derived. In construing this statute the court held that there was no implication of the power to guarantee the contract of another corporation. In *In re Prospect Worsted Mills,* 126 Fed. 1011, the only question decided was that the guaranty was without consideration

and therefore not binding. The question of *ultra vires* was not discussed. In *Thompson* v. *Whitney & Marsh,* 17 Haw. 107, which involved the question of whether the guaranteeing corporation had the power under the statute to indorse the notes of another corporation which was insolvent, merely for the accommodation of such corporation, the court held that it had no such power. The answer to these cases and all other cases of similar import is that they dealt with the question of whether the power existed by implication while we are dealing with the question of whether the power was expressly conferred.

In addition to the power to guarantee the contracts of other corporations, when proper and necessary to the furtherance of its own business, the power is also given the realty company to "aid in any manner any corporation whose stocks * * * are held * * * by this corporation, and to do any acts and things for the preservation, protection, improvement or enhancement of the value of any such stocks." It is urged by the complainants that in the instant case this power was illegally exercised because the realty company was only a minority stockholder in the construction company,—in other words, that the power of the realty company to aid another corporation whose stocks are held by it and to act in any manner for the protection, improvement or enhancement of the value of any such stocks is limited to corporations in which the realty company owns a majority of the stocks. The company's charter places no such restriction upon the exercise of this power nor do we think it arises by necessary implication. Parties dealing with a corporation, whether as creditors or purchasers of the stock, act with full notice of its powers and do so at their own risk. The realty company owned a fraction more than one-fifth of the stock of the construction company and was entitled to share to that extent in its dividends. This interest was

certainly sufficiently large to justify the action taken for its protection or enhancement. If the case required us to decide whether the power was implied it might be necessary to consider the extent of the realty company's stock holdings in the construction company and its potential benefits in the contract which it guaranteed. But since the power to make the guaranty is expressly bestowed that question is not before us.

In *State Bank of Fairfax* v. *Pacific Elevator Co.*, 198 N. W. (Minn.) 304, 305, the court had before it the question of whether the indorsement as surety of certain promissory notes by a corporation which held a large block but less than a majority of the stock of the maker of the notes was within the implied powers of the surety. In sustaining a judgment against the surety the court said: "The notes were given for debts of the milling company. The elevator company claims that it was merely an accommodation surety thereon, and was without power to assume such obligations. It is a well-settled general rule that in the absence of express authority therefor a corporation cannot become a surety or guarantor for the benefit of another. * * * But here the elevator company owned nearly one-half the capital stock of the milling company, and, as such owner, was directly interested in the business of that company. Dividends earned by that company would increase the income of the elevator company and enhance the value of its holdings; losses incurred by that company would reduce the income of the elevator company and lessen the value of its holdings. If the milling company should become unable to continue in business for lack of funds, the elevator company might lose its investment and also be subjected to an assessment upon its stock to pay liabilities. While a corporation cannot become a surety on obligations in which it has no interest, it may guarantee the obligations

of its subsidiary companies; and this doctrine has been extended to permit it to guarantee the obligations of others where the purpose is to promote or protect its own rights or property interests, or to accomplish some legitimate object of financial benefit to it, and not merely to aid the primary obligor. The cases are cited and analyzed in Woods Lumber Co. v. Moore, 183 Cal. 497, 191 Pac. 905, 11 A. L. R. 549, and in the annotation found in 11 A. L. R. at page 554. * * * We are of opinion and hold that the elevator company, as a large stockholder of the milling company, had sufficient interest therein to empower it to execute the guaranties in controversy, and that it is liable thereon."

We think the execution of the trust deeds was not an *ultra vires* act.

The next contention of the complainants is that the execution of the trust deeds was a legal fraud upon them and therefore entitled them to the relief prayed for. The argument made in support of this contention is that the realty company was at the time insolvent or on the verge of insolvency and that the deeds were not supported by a consideration which the law recognizes as valid and sufficient and were therefore, as to complainants, void.

Under the evidence before us the insolvency of the realty company, or at least its precarious condition, may be assumed. It is not claimed, however, nor is there a scintilla of evidence that Bigelow had any knowledge, either actual or constructive, of the realty company's condition. On the contrary, it is conceded that he accepted the deeds in good faith, without any sort of knowledge that their effect would be to hinder, delay or defraud the grantor's creditors. This being true they cannot be unconditionally canceled and the lands restored to the grantor for the benefit of its creditors unless they were unsupported by any consideration which the law recog-

nizes as valid and sufficient. (*Prewit* v. *Wilson,* 103 U. S. 22, 24.) Bigelow, of course, paid no consideration other than the one dollar, the receipt of which is acknowledged. If there was, however, any other consideration which met the requirements of the law, it was not essential to their validity that a consideration should have passed from Bigelow to the realty company. The rule is thus stated in 28 C. J., § 54, pp. 920, 921: "It is not necessary that any consideration pass directly from the guarantee to the guarantor; it is sufficient if the guaranty is based upon some benefit which passes to the principal obligor or some detriment or injury to the guarantee." In 1 Page on Contracts, § 525, p. 864, it is said: "A guaranty which is made as a part of the original transaction needs no separate consideration but is supported by the consideration which supports such original transaction." 2 Parsons on Contracts (7 ed.), § 2, pp. 7, 8, lays down the same rule as follows: "Although the promise to pay the debt of another be in writing, it is nevertheless of no force unless founded upon a consideration. It is itself a distinct contract, and must rest upon its own consideration; but this consideration may be the same with that on which the original debt is founded, for which the guarantor is liable. The rule of law is this: if the original debt or obligation is already incurred or undertaken previous to the collateral undertaking, then there must be a new and distinct consideration to sustain the guaranty. But if the original debt or obligation be founded upon a good consideration, and at the time when it is incurred or undertaken, or before that time, the guaranty is given and received, and enters into the inducement for giving credit or supplying goods, then the consideration for which the original debt is incurred, is regarded as a consideration also for the guaranty. It is not necessary that any consideration pass directly from the party

receiving the guaranty to the party giving it. If the party for whom the guaranty is given receive a benefit, or the party to whom it is given receive an injury, in consequence of the guaranty and as its inducement, this is a sufficient consideration." In *Clark & Henery* v. *Hackfeld & Co.,* 16 Haw. 53, the plaintiffs agreed to bid for the United States contract for the dredging of the entrance to Pearl Harbor. The United States had appropriated for this $94,000. $26,000 more was needed and private concerns interested in this project promised to pay plaintiffs this amount. Defendants guaranteed this payment. In a suit by the contractors on this guaranty the defendants urged that no consideration was shown. The court in discussing this point said (p. 63) : "The contract entered into by plaintiffs constituted a valuable consideration which fully supported defendants' promise. What induced defendants to make the promise, and what value, if any, plaintiffs' work might prove to defendants severally, are matters which have no bearing upon the question of their liability. The burden undertaken by plaintiffs in consequence of defendants' promise makes the consideration." See also *Adams* v. *Huggins,* 78 Mo. App. 219, 222, 223; *Scharnagel* v. *Furst,* 215 Ala. 528, 531.

In the instant case the benefit which passed to the construction company was the awarding of the contract for the construction of the highway. It was in consideration of this that the construction company assumed the obligations that were imposed upon it. As an inducement to Bigelow to award the contract the realty company guaranteed the obligations of the construction company. In fact, Bigelow refused to award the contract unless the guaranty was given. It was then that the guaranty was given and on the faith of it and because of it the contract was awarded to the construction company. There could be no higher consideration for the

guaranty than this.

Another consideration which the law recognizes as sufficient to support the guaranty is the benefit which, as a stockholder in the construction company, the realty company expected to derive from the contract. This rule is stated as follows in 28 C. J. § 55, p. 921: "Where as the result of the carrying out of the contract to which a promise of guaranty is collateral, benefits will accrue to the guarantor, no other consideration is required; any act in the nature of a benefit to the guarantor, or to any person at his request, is sufficient."

In *Harrison* v. *Union Pacific Ry. Co.*, 13 Fed. 522, the plaintiff held twenty bonds of the Arkansas Valley Railway Company. This company was authorized under the laws of Colorado to construct a railroad from Kit Carson, on the Kansas Pacific Railway Company's line, to Pueblo. The construction of this road was valuable to the Kansas Pacific company because it would become a feeder to the latter company's line. The Kansas Pacific company therefore guaranteed the bonds of the Arkansas Valley company. The Union Pacific became successor in liability to the Kansas Pacific company. Plaintiff sued the Union Pacific on the guaranty. The court in discussing whether there was a consideration for the guaranty said (p. 524): "The Kansas Pacific Company is bound by its guaranty of said 20 bonds. The pecuniary interest which that company had in the Arkansas Valley Company, and in the construction of the road from Kit Carson to Pueblo, was a sufficient consideration for the guaranty."

Another case supporting the rule above is *Voska, Foelsch & Sidlo* v. *Ruland*, 158 N. Y. S. 780. In this case the plaintiff contracted to do marble work for the Forty-First Street Realty Company, the latter being engaged in renovating a building. The Forty-First Street company was dilatory in making its payments and plaintiff

fearing a default in final payments decided to stop its work. The defendant, who was a stockholder in and vice-president of the Forty-First Street company, guaranteed the payments of that company to the plaintiff. Plaintiff brought an action against defendant on the guaranty. The court in deciding that there was a sufficient consideration for the guaranty said (p. 783) : "The plaintiff was about to quit and leave the work unfinished. It was to defendant's interest as a stockholder in the Forty-First Street Company that the work should not be suspended. This furnished sufficient consideration for an independent promise to pay plaintiff for the work remaining to be done." See also *Woods Lumber Co.* v. *Moore,* 183 Cal. 497, 504; *Mayfield* v. *Eubank,* 278 S. W. (Tex.) 243, 245, 246; *Gunderson* v. *Hasterlik,* 100 Ill. App. 429, 430.

There is still another consideration for the guaranty which has the sanction of the law. That is the detriment suffered by the guarantee. Detriment is defined in 1 Williston on Contracts, § 102a, as follows: "It means giving up something which the promisee had a right to keep or doing something which he had a right not to do." It is defined in 1 Page on Contracts, § 515, as follows: " 'Detriment' means that the promisee has in return for the promise forborne some legal right which he would otherwise have been entitled to exercise."

In the absence of a sufficient bond Bigelow had the legal right, indeed it was his duty, to refuse to award the contract for the construction of the highway to the National Construction Company. In return for the guaranty of the realty company he forbore to exercise this right and awarded the contract. This was in law a detriment and therefore a good consideration for the guaranty. *Trousseau* v. *Cartwright,* 10 Haw. 138, 142, 143; *Mayfield* v. *Eubank,* 278 S. W. (Tex.) 243, 246.

It must be kept in mind that in discussing the ques-

tion of consideration we were dealing solely with the rights of an innocent grantee and with conveyances that were supported by considerations which the law recognizes as sufficient.

While the instant suit is against Bigelow, who is a mere trustee, the conflict is virtually between the complainants and the beneficiaries of the trust, who are, according to the trust deeds, the Territory and those who furnished material and labor that were used in the construction of the highway. It is stipulated that the aggregate of the claims filed against the construction company by these beneficiaries is in excess of $100,000. It is also conceded that the construction company and the sureties on its bond are insolvent. If, therefore, the trust deeds should be canceled it would deprive those for whose benefit they were taken in good faith of the only security they have for the payment of their claims. This equity does not permit.

The decree appealed from is affirmed.

*W. R. Ouderkirk* and *I. M. Stainback* (*W. R. Ouderkirk* and *Kemp & Stainback* on the briefs) for complainants.

*C. N. Tavares,* Deputy Attorney General (also on the brief), for respondent Bigelow.